**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| M.C. 1 and M.C. 2, by and through their legal guardian NICOLE REISBERG, and M.C. 3 and M.C. 4, by and through their legal guardian LILA BYOCK, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>CURRICULUM ASSOCIATES, LLC,<br><br>       Defendant. | Civ. No. 1:25-cv-13942-FDS<br>**REQUEST FOR ORAL ARGUMENT** |

**DEFENDANT CURRICULUM ASSOCIATES, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL BACKGROUND.................................................................................. 2

    A.    Curriculum Associates Provides Valuable Tools to Aid Students' Learning.................. 2

    B.    Plaintiffs Allege their Children Use Curriculum Associates' i-Ready Products. ............ 3

    C.    Plaintiffs Allege Curriculum Associates Engages Service Providers to Support Its Products.................................................................................................................. 3

III.  LEGAL STANDARDS........................................................................................... 4

IV.  ARGUMENT.......................................................................................................... 4

    A.    Plaintiffs' Federal and State Wiretapping Claims Fail Under Party and Third-Party Interception Theories of Wiretapping (Counts I-III). ......................................................... 4

       1.    The Party Exception Bars a Claim to the Extent Based on *Curriculum Associates'* Interception. ......................................................................................................... 4

       2.    Plaintiffs Fail to State a Claim Based on Third-Party Interception. .............................. 5

    B.    Plaintiffs' CIPA "Pen Register" Claim Fails for Multiple, Independent Reasons (Count IV). ....................................................................................................................... 9

    C.    Plaintiffs Lack CDAFA Standing and Fail to State a Claim (Count V). ....................... 13

    D.    Plaintiffs' Massachusetts Privacy Act Claim Fails For Multiple, Independent Reasons (Count VI). ............................................................................................................ 16

    E.    Plaintiffs' 93A Claim Fails Because They Do Not Plead Cognizable Injury or Conduct of Trade or Commerce (Count IX). .............................................................................. 18

    F.    Plaintiffs Fail to Plead Unjust Enrichment (Count VII). ............................................... 20

    G.    Plaintiffs Fail to Plead a Plausible Negligence Claim (Count VIII). ............................. 23

V.   CONCLUSION ..................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Data Priv. Litig.*,
   2026 WL 146025 (N.D. Cal. Jan. 20, 2026) ....................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................................4

*Axford v. TGM Andover Park, LLC*,
   2021 WL 681953 (D. Mass. Feb. 22, 2021) .....................................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................................4

*Branyan v. Sw. Airlines Co.*,
   105 F.Supp.3d 120 (D. Mass. 2015) .................................................................................16

*Briskin v. Shopify, Inc.*,
   2026 WL 161441 (N.D. Cal. Jan. 21, 2026) .....................................................................15

*Brodsky v. Apple Inc.*,
   445 F.Supp.3d 110 (N.D. Cal. 2020) .................................................................................4

*Brown v. Bank of Am., Nat'l, Ass'n*,
   67 F.Supp.3d 508 (D. Mass. 2014) ...................................................................................18

*Burns v. City of Worcester*,
   772 F.Supp.3d 109 (D. Mass. 2025) .................................................................................17

*Capitol Records Inc. v. Thomas-Rasset*,
   2009 WL 1664468 (D. Minn. June 11, 2009) ..............................................................11, 12

*Conley v. Roseland Residential Tr.*,
   442 F.Supp.3d 443 (D. Mass. 2020) .................................................................................24

*Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*,
   455 Mass. 458 (2009) .......................................................................................................24

*Custom Packaging Supply, Inc. v. Phillips*,
   2015 WL 8334793 (C.D.Cal. Dec. 7, 2015) .....................................................................13

*Deutsche Lufthansa AG v. Mass. Port Auth.*,
   2018 WL 3466938 (D. Mass. July 18, 2018) ....................................................................25

*Doe v. Brandeis Univ.*,
177 F.Supp.3d 561 (D. Mass. 2016) ...................................................................................16

*Doe v. Cnty. of Santa Clara*,
2024 WL 3346257 (N.D. Cal. July 8, 2024)........................................................................14

*Doe v. Eating Recovery Ctr. LLC*,
806 F.Supp.3d 1109 (N.D. Cal. 2025) ................................................................................11

*Doe v. Lawrence Gen. Hosp.*,
2025 WL 2808055 (D. Mass. Aug. 29, 2025), *report and recommendation
adopted in relevant part*, 2025 WL 2807673 (D. Mass. Sep. 30, 2025)...................................5

*Doe v. Stonehill Coll., Inc.*,
55 F.4th 302 (1st Cir. 2022)........................................................................................23, 25

*Doe v. Tenet Healthcare Corp.*,
789 F.Supp.3d 814 (E.D. Cal. June 9, 2025) ......................................................................14

*Eggiman v. Bank of Am., N.A.*,
2023 WL 2647071 (D. Mass. Mar. 27, 2023)......................................................................25

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..............................................................................................5

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) ...........................................................................................15

*Flanagan v. Flanagan*,
27 Cal.4th 766 (2002) ........................................................................................................8

*Graham v. Noom, Inc.*,
533 F.Supp.3d 823 (N.D. Cal. 2021) ...................................................................................6

*Heiting v. Taro Pharms. USA, Inc.*,
709 F.Supp.3d 1007 (C.D. Cal. 2023) ...............................................................7, 13, 14, 15

*Hernandez-Silva v. Instructure, Inc.*,
2025 WL 2233210 (C.D. Cal. Aug. 4, 2025)........................................................................7

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)........................................................................8

*I.C. v. Zynga, Inc.*,
600 F.Supp.3d 1034 (N.D. Cal. 2022) ...............................................................................10

*John Boyd Co. v. Bos. Gas Co.*,
775 F.Supp. 435 (D. Mass. 1991) ......................................................................................19

iv

*Joiner v. NHL Enters., Inc.*,
    2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025) .................................................................................5

*Jones v. Peloton Interactive, Inc.*,
    720 F.Supp.3d 940 (S.D. Cal. 2024) ...........................................................................................6

*Juliano v. Simpson*,
    461 Mass. 527 (2012) ...............................................................................................................25

*Karp v. Gap, Inc.*,
    2014 WL 4924229 (D. Mass. Sep. 29, 2014) .......................................................................21, 22

*In re LastPass Data Sec. Incident Litig.*,
    742 F.Supp.3d 109 (D. Mass. 2024) ...............................................................................20, 24, 25

*Latimore v. Houle*,
    2018 WL 1972784 (D. Mass. Apr. 26, 2018) ............................................................................16

*Levings v. Open Text Corp.*,
    No. 24STCV05440 (Cal. Super. Ct. L.A. Cnty. Sep. 3, 2024) ...................................................12

*Licea v. Hickory Farms, LLC*,
    2024 WL 1698147 (Cal. Super. Ct. L.A. Cnty. Mar. 13, 2024) ..................................................12

*Lopez v. Sony Elecs., Inc.*,
    5 Cal.5th 627 (2018) .................................................................................................................12

*Loughlin v. Vi-Jon, LLC*,
    728 F.Supp.3d 163 (D. Mass. 2024) ..........................................................................................19

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).....................................................................................................................9

*Malibu Media, LLC v. Pontello*,
    2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) .......................................................................12

*Marchuk v. Long*,
    2025 WL 944454 (D. Mass. Mar. 3, 2025)................................................................................16

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
    552 F.3d 47 (1st Cir. 2009).................................................................................................20, 21

*Maxfield v. UKG Inc.*,
    2025 WL 1581308 (D. Mass. June 4, 2025) ..............................................................................25

*McManus v. Tufts Med. Ctr., Inc.*,
    2025 WL 2778025 (D. Mass. Sep. 29, 2025) ..............................................................................5

*Metro. Life Ins. Co. v. Cotter*,
464 Mass. 623 (2013) ................................................................................22

*Mitchener v. CuriosityStream, Inc.*,
2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ............................................10

*Morrissey v. New England Deaconess Association-Abundant Life Communities,*
*Inc.*, 90 Mass.App.Ct. 1105 (2016)....................................................19, 20

*In re MOVEit Customer Data Sec. Breach Litig.*,
2025 WL 2179475 (D. Mass. July 31, 2025).............................................25

*People v. Hawkins*,
98 Cal.App.4th 1428 (2002) ......................................................................15

*People v. McDaniel*,
22 Cal.App.4th 278 (1994) ........................................................................15

*Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
894 F.Supp.2d 144 (D. Mass. 2012) ...........................................................4

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................................................................10

*Priddy. Priddy v. ZOLL Med. Corp.*,
2025 WL 975234 (D. Mass. Mar. 31, 2025)........................................19, 25

*Reed v. Zipcar, Inc.*,
883 F.Supp.2d 329 (D. Mass. 2012) ..........................................................21

*Reidy v. Umass Mem'l Med. Ctr., Inc.*,
2021 WL 6777622 (Mass. Super. Ct. June 17, 2021)................................23

*Reisberg v. Renaissance Learning, Inc.*,
Case No. 8:25-cv-01379-FWS-JDE (C.D. Cal. Feb. 17, 2026), Dkt. No. 59 .........................14

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)..............................................8

*Rodriguez v. Aquatic Sales Sols. LLC*,
735 F.Supp.3d 1208 (C.D. Cal. 2024) .........................................................6

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .............................................10

*Rodriguez v. Ford Motor Co.*,
722 F.Supp.3d 1104 (S.D. Cal. Mar. 21, 2024) ..........................................8

*Rodriguez v. Plivo Inc.*,
No. 24STCV08972 (Cal. Super. Ct. L.A. Cnty. Oct. 2, 2024) ...............................................12

*Rojas v. Cap. One Fin. Corp.*,
2024 WL 4045376 (D. Mass. Sep. 4, 2024) ........................................................................25

*RTR Techs., Inc. v. Helming*,
815 F.Supp.2d 411 (D. Mass. 2011) ...................................................................................19

*Salamon v. Terra*,
394 Mass. 857 (1985) ........................................................................................................20

*Sanchez v. Letter Four*,
No. 24STCV18924 (Cal. Super. Ct. L.A. Cnty. Apr. 17, 2025)...........................................12

*Scharon v. Paramount Glob.*,
No. 25STCV10585 (Cal. Super. Ct. L.A. Cnty. Oct. 3, 2025) .............................................12

*Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
409 Mass. 514 (1991) ........................................................................................................17

*Schuster v. Wynn Ma, LLC*,
118 F.4th 30 (1st Cir. 2024)...............................................................................................21

*Shaulis v. Nordstrom, Inc.*,
865 F.3d 1 (1st Cir. 2017)..............................................................................................18, 21

*Sheehan v. Town of Carver, MA*,
2025 WL 1333711 (D. Mass. May 7, 2025).........................................................................16

*Smith v. LoanMe, Inc.*,
11 Cal.5th 183 (2021) ........................................................................................................11

*Smith v. YETI Coolers, LLC*,
754 F.Supp.3d 933 (N.D. Cal. 2024) .................................................................................6, 8

*Squeri v. Mount Ida Coll.*,
2019 WL 2249722 (D. Mass. May 24, 2019) ......................................................................17

*Steinmetz v. Coyle & Caron, Inc.*,
862 F.3d 128 (1st Cir. 2017)...............................................................................................19

*Tedeschi-Freij v. Percy Law Grp., P.C.*,
99 Mass.App.Ct. 772 (2021)...............................................................................................20

*In re TJX Cos. Retail Sec. Breach Litig.*,
564 F.3d 489 (1st Cir. 2009)...............................................................................................25

*Tomasella v. Nestle USA, Inc.*,
    962 F.3d 60 (1st Cir. 2020) ............................................................................................21

*Tsering v. Meta Platforms, Inc.*,
    2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .....................................................................15

*United States v. Forrester*,
    512 F.3d 500 (9th Cir. 2008) ..........................................................................................10

*United States v. Gottesfeld*,
    319 F.Supp.3d 548 (D. Mass. 2018) ...............................................................................10

*United States v. Morel*,
    922 F.3d 1 (1st Cir. 2019) ...............................................................................................10

*United States v. Olson*,
    856 F.3d 1216 (9th Cir. 2017) ........................................................................................15

*Va. House of Delegates v. Bethune-Hill*,
    587 U.S. 658 (2019) ..........................................................................................................4

*Valenzuela v. Kroker Co.*,
    2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) ..................................................................7

*Vernonia Sch. Dist. 47J v. Acton*,
    515 U.S. 646 (1995) ..........................................................................................................9

*Walker v. Bos. Med. Ctr. Corp.*,
    33 Mass.L.Rptr. 179 (Mass. Super. Ct. Nov. 20, 2015) .................................................24

*Walsh v. Dep't of Alcoholic Beverage Control*,
    59 Cal.2d 757 (1963) ......................................................................................................11

*Webb v. Injured Workers Pharmacy, LLC*,
    72 F.4th 365 (1st Cir. 2023) ......................................................................................10, 24

*Zoll Med. Corp. v. Barracuda Networks, Inc.*,
    565 F.Supp.3d 101 (D. Mass. 2021) ...............................................................................24

**Statutes**

Cal. Bus. & Prof. Code § 22584(b)(4) .......................................................................................2

Cal. Civ. Code § 1798.100(c) ...................................................................................................12

Cal. Educ. Code § 49076(a)(2) ...................................................................................................2

Cal. Penal Code
  § 502(a) ...................................................................................................................13
  § 502(b)(1) ..............................................................................................................15
  § 502(e)(1) ..............................................................................................................13
  § 638.50(b) ..............................................................................................................13
  § 638.51(a) ................................................................................................................9

Mass. Gen. Laws
  ch. 93A, § 2 ........................................................................................................18, 19
  ch. 214, § 1B ...........................................................................................................16

## Other Authorities

34 C.F.R.
  § 99.31(a)(1)(i)(A) ....................................................................................................2
  § 99.33(b)(1) .............................................................................................................2

64 Fed. Reg.
  59888 (Nov. 3, 1999) ................................................................................................2
  59903 (Nov. 3, 1999) ................................................................................................2

Cal. Assem. Comm. on Privacy & Consumer Prot., Analysis of A.B. 929, 2015-
  2016 Leg., Reg. Sess. (Apr. 21, 2015) ....................................................................11

Fed. R. Civ. Proc.
  12(b)(1) .....................................................................................................................4
  Rule 12(b)(6) .............................................................................................................4

## I.    INTRODUCTION

This case represents the most recent chapter in Plaintiffs' and their counsel's ideologically-motivated crusade to use the courts—rather than the legislative process—to change how technology is used in schools. In this and other lawsuits brought against major U.S. educational technology ("edtech") providers, Plaintiffs and their counsel seek to destroy a longstanding regulatory framework that allows schools to consent to edtech providers' collection of student data in the classroom. The Court need not, however, engage with Plaintiffs' policy views to dismiss this action; the Complaint's myriad legal deficiencies provide ample grounds.

Plaintiffs uniformly fail to state their claims. Their wiretapping claims fail because a party cannot be held liable for wiretapping its own communications with users of its service, and because Plaintiffs do not plausibly plead how Curriculum Associates supposedly aided third-party interception of their data. Plaintiffs' CIPA "pen register" claim fails as a matter of law because it cannot apply to Curriculum Associates' alleged collection of IP addresses and metadata. Plaintiffs also fail to plead statutory standing—and do not state a claim—under the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"). Plaintiffs do not (and cannot) plead required elements of their Massachusetts statutory claims—such as that Curriculum Associates disclosed highly personal information without a countervailing interest when it purportedly shared data with third parties, or that Plaintiffs have suffered any cognizable economic injury. Their unjust enrichment cause of action fails because Plaintiffs have an adequate remedy at law and fail to allege an inequitable benefit. Nor can Plaintiffs' novel negligence claim stand: their alleged injury (i.e., Curriculum Associates somehow diminishing the value of their data) is entirely speculative—and unsurprisingly, Plaintiffs cannot therefore establish a causal link between the actions purportedly taken by Curriculum Associates and the alleged harm. In sum, Plaintiffs' Complaint is long on rhetoric about the supposed flaws of the edtech sector but short

1

on allegations sufficient to state a claim. Accordingly, all claims should be dismissed.

## II.    FACTUAL BACKGROUND

### A. Curriculum Associates Provides Valuable Tools to Aid Students' Learning.

Curriculum Associates is one of a growing number of edtech providers that are integral to facilitating learning in the classroom. Like many other such companies, Curriculum Associates contracts with schools and school districts to provide educational software and services. Compl. ¶ 43. Educators rely on Curriculum Associates' tools to provide math and reading assessments to inform instruction. *See id.* Because these tools enhance the learning process, their use has become commonplace. *See id.* ¶ 42 ("School districts access an average of nearly 3,000 EdTech tools during a school year. A single student accesses approximately 50 EdTech tools per year.").[1]

Applicable federal and state student data privacy laws recognize that schools need support from service providers, including edtech companies, and thus contain exceptions to generally applicable consent requirements. Regulations implementing the federal Family Educational Rights and Privacy Act ("FERPA") and a similar California statute authorize schools to share student data with service providers for legitimate educational purposes—as determined by the school—without express parental consent. *See* 34 C.F.R. § 99.31(a)(1)(i)(A); Cal. Educ. Code § 49076(a)(2). Both federal and California law also authorize service providers to disclose student data to third parties. *See, e.g.*, 34 C.F.R. § 99.33(b)(1) ("the party receiving the information may make further disclosures of the information" where doing so would, *inter alia*, further legitimate educational interests); Cal. Bus. & Prof. Code § 22584(b)(4) (allowing operator to "further disclose" information to, e.g., "allow or improve operability and functionality").[2]

---

[1] Unless otherwise stated, all emphasis is added, and all internal citations, quotations, and alterations are omitted.

[2] For more than two decades, the Federal Trade Commission ("FTC") has published guidance confirming that schools can consent on behalf of parents to the collection of personal information for educational purposes. *See* Children's Online Privacy Protection Rule, 64 Fed. Reg. 59888, 59903 (Nov. 3, 1999) (online operators can rely on school

Curriculum Associates' services comply with this well-established regulatory regime, and nowhere in the Complaint do Plaintiffs allege that Curriculum Associates fails to obtain school consent for the data collection, storage, use, and disclosure practices at issue.

**B.  Plaintiffs Allege their Children Use Curriculum Associates' i-Ready Products.**

Plaintiffs Nicole Reisberg and Lila Byock bring this action on behalf of their minor children: (1) Reisberg's children, M.C. 1 and M.C. 2, and (2) Byock's children, M.C. 3 and M.C. 4, all of whom attended school in California. Compl. ¶¶ 27–32. Plaintiffs allege that, collectively, their children used three of Curriculum Associates' i-Ready Products (the "i-Ready Products"): (1) Diagnostic and Diagnostic Reports (*id.* ¶¶ 50, 66, 79, 96); (2) Standards Mastery and Standards Mastery Reports (*id.* ¶ 50); and (3) Personalized Instruction Products (*id.* ¶¶ 50, 79, 96). Plaintiffs' claims are limited to the i-Ready Products, *see id.* ¶ 43, which they allege collect student data, including student names, student IDs, grade levels, responses to questions, completion dates, overall placement, and IP addresses. *Id.* ¶¶ 118, 119. Plaintiffs allege that Curriculum Associates collected and used their children's data via the i-Ready Products without their consent. *Id.* ¶ 120.

**C.  Plaintiffs Allege Curriculum Associates Engages Service Providers to Support Its Products.**

Plaintiffs allege Curriculum Associates engages service providers to provide hosting, information technology, customer support, data security, customer research, educational research, and analytics services. Compl. ¶¶ 167, 366. Plaintiffs allege that Munetrix supports the provision of educational analytics and actionable insights, *id.* ¶ 169, Clever enables the use of single-sign-on services for i-Ready, *id.* ¶ 179, and Google supports analytics of its products, *id.* ¶ 231. Plaintiffs

---

authorization); Complying with COPPA: Frequently Asked Questions, N.1, FTC (July 2020), https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions#N.%20COPPA%20AND%20SCHOOLS (last visited Oct. 28, 2025) ("schools may act as the parent's agent and can consent under [the Children's Online Privacy Protection Act ('COPPA')] to the collection of kids' information on the parent's behalf").

allege that Curriculum Associates did not obtain their direct consent to share data with these service providers. *Id.* ¶¶ 181-182.

## III.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to dismiss a claim for lack of subject matter jurisdiction, including for lack of Article III standing. *Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 894 F.Supp.2d 144, 150 (D. Mass. 2012). To bear their burden to establish Article III standing, plaintiffs must show "(1) a concrete and particularized injury, that (2) is fairly traceable to the challenged conduct, and (3) is likely to be redressed by a favorable decision." *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 662 (2019). To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must allege enough facts to state a facially plausible claim to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Factual allegations must create "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    ARGUMENT

### A.    Plaintiffs' Federal and State Wiretapping Claims Fail Under Party and Third-Party Interception Theories of Wiretapping (Counts I-III).

Both the California Invasion of Privacy Act ("CIPA") and the federal Electronic Communications Privacy Act ("ECPA") prohibit unauthorized interception of communications, and courts analyze claims under both statutes together. *See Brodsky v. Apple Inc.*, 445 F.Supp.3d 110, 127 (N.D. Cal. 2020). Plaintiffs appear to plead that Curriculum Associates violates the wiretapping statutes in two ways: *first*, by collecting data from Plaintiffs, i.e., by *wiretapping its own communications* with Plaintiffs, and *second*, by disclosing Plaintiffs' data to third-party service providers. Neither theory is plausibly pled, and both statutory claims must be dismissed.

#### 1.  The Party Exception Bars a Claim to the Extent Based on *Curriculum*

4

*Associates'* Interception.

Plaintiffs claim that, in collecting student data in its i-Ready Products, Curriculum Associates is "intercepting" those communications in violation of both the ECPA and CIPA. Compl. ¶ 360 (alleging that "[t]he communications intercepted by Curriculum Associates included 'contents' of electronic communications . . . that Plaintiffs and Nationwide Class members *sent to Curriculum Associates* and for which Plaintiffs and Nationwide Class members *received communications in return from Curriculum Associates*"). That theory fails because Curriculum Associates cannot intercept its own communications; both the ECPA and CIPA "contain an exemption from liability for a person who is a party to the communication[.]" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020).[3]

### 2. Plaintiffs Fail to State a Claim Based on Third-Party Interception.

Plaintiffs' CIPA theory that Curriculum Associates aided and abetted *third parties'* interception of their data (Compl. ¶ 378 (Section 631); ¶ 385 (Section 632)) fares no better.[4]

#### a. Plaintiffs' Section 631(a) Aiding-and-Abetting Claim Fails.

"To plead a violation of § 631(a), Plaintiff must allege sufficient facts to show that Defendant either (1) engaged in intentional wiretapping; (2) willfully read the contents or meaning of a communication without consent; (3) attempted to use or communicate information obtained

---

[3] To the extent Plaintiffs may argue that the crime-tort exception vitiates the party exception to the ECPA in this case, *see* Compl. ¶ 367 (alleging "Curriculum Associates disclosed the content of those communications with third parties for the purpose of committing . . . the tort of invasion of privacy" in violation of the ECPA), they are incorrect. Plaintiffs fail to plausibly plead that Curriculum Associates' collection or disclosure of data was primarily motivated by a tortious intent separate from the act of wiretapping itself, as required by the crime-tort exception. *See Doe v. Lawrence Gen. Hosp.*, 2025 WL 2808055, at *13 (D. Mass. Aug. 29, 2025) (exception did not apply where "[t]here is no allegation that the act of disclosure was in any respect separate or independent of the intentional act of deploying the web tracking tools"), *report and recommendation adopted in relevant part*, 2025 WL 2807673 (D. Mass. Sep. 30, 2025); *McManus v. Tufts Med. Ctr., Inc.*, 2025 WL 2778025, at *3 (D. Mass. Sep. 29, 2025) (allegations that tracking technology was installed and data shared with third parties for "financial motives" were "not sufficient to support the inference that Defendant's purpose was to engage in conduct made impermissible by relevant statutes").

[4] This theory applies only to Plaintiffs' CIPA claims, as "there is no secondary civil liability under" the ECPA. *Joiner v. NHL Enters., Inc*., 2025 WL 2846431, at *7 n.6 (S.D.N.Y. Aug. 29, 2025).

5

as a result of engaging in the previous two activities; or (4) aided another in any of the previous three activities." *Smith v. YETI Coolers, LLC*, 754 F.Supp.3d 933, 939 (N.D. Cal. 2024).[5] Plaintiffs fail to state a claim under subsection (4) for multiple reasons as explained below.

*No Third-Party Involvement*. CIPA does not impose liability for a party's disclosure of data to service providers that merely store or analyze that data for its own use. *See, e.g.*, *Graham v. Noom, Inc.*, 533 F.Supp.3d 823, 832 (N.D. Cal. 2021) (party not liable for aiding and abetting service provider that is a mere "extension of" the party, allowing it "to record and analyze its own data in aid of [its] business," as opposed to using it for the third party's own purpose).

The Complaint concedes that the "third parties" at issue—Clever, Munetrix, and Google (Compl. ¶ 366), the first two of which Plaintiffs make only the most cursory general allegations about (*id*. ¶¶ 169, 179)—are vendors that provide services to Curriculum Associates, including "hosting," "information technology," and "data security." Compl. ¶ 167; *see also supra* § II.C.[6] With respect to Google, Plaintiffs resort to a speculative diatribe about what Google is *theoretically capable* of doing with data it receives, not what it *actually does with Plaintiffs' data*. Compl. ¶¶ 191-230; *id*. ¶ 235 ("Google *can* assemble a unique, longitudinal profile"); ¶ 238 ("Google *is able to* stitch together lesson loads, activity starts"); ¶ 253 ("*capable of* being aggregated by Google"). Such allegations are insufficient to plead third-party interception. *See Jones v. Peloton Interactive, Inc.*, 720 F.Supp.3d 940, 946 (S.D. Cal. 2024) (dismissing CIPA claim where plaintiff did not allege the third party "collects this information and aggregates the data for resale or distribution to other vendors which would make [it] a third-party").

---

[5] The first prong of CIPA Section 631(a) is not at issue because it does not apply to Internet communications. *See Rodriguez v. Aquatic Sales Sols. LLC*, 735 F.Supp.3d 1208, 1227 (C.D. Cal. 2024).

[6] Plaintiffs' allegations with respect to Munetrix and Clever (the latter of which is engaged by *schools*, not by Curriculum Associates, Compl. ¶ 179) are also entirely speculative. *Id*. ¶¶ 169, 179. The Complaint is devoid of factual allegations that they intercepted *any* of Plaintiffs' data in transit. That alone is fatal to their claim.

***M.C.1, M.C.2, and M.C.4 Do Not Allege In-Transit Interception***. The Complaint is devoid of any factual allegations that the "contents" of these Plaintiffs' communications were in fact intercepted by a third party while "in transit" as required by Section 631(a). *See generally* Compl. ¶¶ 231-253 (discussing only M.C.3).[7] Absent any allegation as to how a third party "intercept[ed] Plaintiffs' data in particular," these Plaintiffs' claim fails. *Hernandez-Silva v. Instructure, Inc.*, 2025 WL 2233210, at *5 (C.D. Cal. Aug. 4, 2025) (dismissing CIPA claim against edtech provider); *see also Heiting v. Taro Pharms. USA, Inc.*, 709 F.Supp.3d 1007, 1019 (C.D. Cal. 2023) (allegations that "code implanted on Defendant's website intercepts the inquiries . . . and diverts them to" third party are too "conclusory" to state a claim). In short, Plaintiffs allege no "interception" for Curriculum Associates to have aided and abetted.

***M.C.3 Does Not Allege Curriculum Associates "Aided and Abetted*.***" To state a CIPA aiding-and-abetting claim, a plaintiff must allege that the defendant "a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Valenzuela v. Kroker Co.*, 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024) (dismissing aiding-and-abetting claim against web provider who "allowed" third party to embed code on its site, where there was no allegation that defendant "either knew [the third party's] conduct constituted a breach of duty or how [defendant] itself engaged in conduct constituting a breach of duty"). Here, Plaintiffs allege that ***as a result of*** M.C.3's use of a Google Chromebook (which also runs Google Classroom,

---

[7] Although Plaintiffs claim to have conducted forensic analysis on M.C.4's iPad, (Compl. ¶¶ 183, 187, 297), tellingly, they omit any description or results of that analysis. The conclusory allegation that such analysis "reveal[s] that Curriculum Associates generates, records, and transmits information about Plaintiffs to third parties in real time as they use its Products" (*id.* ¶ 183) is nothing more than a recitation of the "in transit interception" element of their CIPA claim and is not sufficient to state a claim. *See Heiting*, 709 F.Supp.3d at 1018-19.

Compl. ¶ 227), "i-Ready causes student information to be sent to Google every time the student interacts with i-Ready," *id*. ¶ 233. Implicit in this allegation is that M.C.3's Chromebook and/or Google Classroom facilitate the collection and disclosure of M.C.3's data, a fact of which Plaintiffs do not allege Curriculum Associates is even aware. Plaintiffs therefore cannot show that Curriculum Associates "knew" Google was breaching an independent duty to students or engaging in tortious conduct. And given this lack of knowledge, Curriculum Associates cannot—as a matter of simple logic—have knowingly assisted Google in such conduct. *See Rodriguez v. Ford Motor Co.*, 722 F.Supp.3d 1104, 1123-24 (S.D. Cal. Mar. 21, 2024) (plaintiff failed to plead aiding and abetting scienter where plaintiff alleged that "[d]efendant plugged [third party's API] into its website" but not that "[d]efendants knew [third party's] conduct constituted a breach of some duty," let alone knew "of the unlawful purpose of" the third party).

### b. Plaintiffs' Section 632 Aiding-and-Abetting Claim Fails.

Plaintiffs' Section 632 claim fails for the same reasons as their Section 631 claim—for lack of scienter as to M.C.3 and lack of factual allegations that any third party eavesdropped on M.C.1, 2, or 4's communications. *See Smith*, 754 F.Supp.3d at 944 (Section 631 mental state requirement also applies to Section 632). The claim also fails because Section 632 applies only to "confidential communication[s]" where the party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal.4th 766, 768 (2002). There is a "presumption that Internet communications do not reasonably give rise to that expectation" under CIPA. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019). The Complaint concedes that the basis of Plaintiffs' Section 632 claim is their "internet communications," Compl. ¶ 384, and summarizes at length the commonplace collection of communications on the internet, Compl. ¶¶ 38-42, underscoring that Plaintiffs had no reasonable expectation of privacy. *See Hubbard v. Google LLC*, 2024 WL 3302066, at *7 & n.9 (N.D. Cal.

8

July 1, 2024) (granting motion to dismiss privacy claims, as "reasonable users should expect the collection of their internet-browsing data" particularly where complaint acknowledges "commonplace collection . . . of such data"). Finally, "students within the school environment have a lesser expectation of privacy than members of the population generally," *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656-57 (1995), such that the collection of routine educational data cannot constitute "confidential communications" under Section 632.

**B.     Plaintiffs' CIPA "Pen Register" Claim Fails for Multiple, Independent Reasons (Count IV).**

In the alternative to their wiretapping claim, Plaintiffs assert that Curriculum Associates' products are prohibited "pen register" devices that purportedly collect users' IP address information and routing metadata without Plaintiffs' consent or a court order.[8] *See* Cal. Penal Code § 638.51(a). This approach is flawed for the multiple, independently dispositive reasons described below, including that Plaintiffs have not established Article III standing to sue, CIPA's plain text says nothing about IP address or similar information, and Curriculum Associates' products do not fit the statutory definition of a pen register device. Plaintiffs' theory is also deeply misguided insofar as it would see this Court impose liability on Curriculum Associates for receiving visitors' IP addresses when loading the pages they request—or put differently, for facilitating web browsing as we know it.

*No Article III Standing*. First, Plaintiffs lack Article III standing to bring their CIPA pen register claim because they have suffered no injury in fact involving personal information over which they have a cognizable privacy interest. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

---

[8] *See* Compl. ¶ 401 (alleging collection of "Device Metadata" in addition to IP address information, which Plaintiffs define to include "other device identifier information such as device type, browser type, unique cookie identifiers (such as the Google CID), session identifiers, referrer URLs, user-agent strings, clickstream paths, and timestamped navigation or submission data"). Insofar as Plaintiffs attempt in their Opposition to assert collection of additional or different data points, Curriculum Associates reserves the right to respond.

Courts have repeatedly held that there is no "reasonable expectation of privacy" in IP address information. *United States v. Morel*, 922 F.3d 1, 9 (1st Cir. 2019); *United States v. Gottesfeld*, 319 F.Supp.3d 548, 564 (D. Mass. 2018) (same); *see also United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("Internet users have no expectation of privacy in . . . the IP addresses of the websites they visit[.]"). Nor do Plaintiffs have a cognizable privacy interest over the handful of additional forms of "metadata" they allege Curriculum Associates' products collect—like device or browser information.[9]

Even if Plaintiffs did have a privacy interest in their IP address information and related metadata, they have not adequately alleged how the data practices at issue constitute a harm with "a close historical or common-law analogue" sufficient to confer Article III standing. *See Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 372 (1st Cir. 2023) (The "injury-in-fact" inquiry under *TransUnion LLC v. Ramirez* "asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury[.]"); *see also Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (affirming dismissal where plaintiff did not "explain how the tracking of her interactions with the [] website caused her to experience any kind of harm that is remotely similar to the 'highly offensive' [privacy] interferences or disclosures that were actionable at common law[,]" as necessary for Article III standing). This Court therefore lacks subject-matter jurisdiction and should dismiss Plaintiffs' pen register claim on this basis alone.

***Statute Does Not Apply to IP Address Information***. Even if this Court had jurisdiction

---

[9] *See, e.g.*, *I.C. v. Zynga, Inc.*, 600 F.Supp.3d 1034, 1049 (N.D. Cal. 2022) (no privacy interest and therefore no Article III standing in data "designed to be exchanged to facilitate communication," i.e., username); *Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025) (no privacy interest in "metadata" sufficient to confer Article III standing); *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *5 (S.D. Cal. Nov. 3, 2025) (rejecting the argument that plaintiff had a cognizable privacy interest in, and therefore had established Article III standing based on, other, non-IP address information, including browser data, operating system, and "mobile ad IDs" because such information "appears to be designed to be exchanged to facilitate communication and/or to constitute metadata").

over Plaintiffs' claim (it does not), it would still fail because the intent of California lawmakers—as demonstrated by CIPA's statutory language and legislative history—shows the pen register prohibition does not apply to IP addresses or related information. Basic principles of statutory construction require that California criminal statutes are interpreted—"even when," as here, "the underlying action is civil in nature"—"as favorably to the defendant as the language of the statute and the circumstances of its application may reasonably permit." *Walsh v. Dep't of Alcoholic Beverage Control*, 59 Cal.2d 757, 764-65 (1963). The pen register statute never mentions the phrase "IP address" or the word "metadata," so these principles counsel against "resolv[ing] CIPA's many ambiguities" to encompass technologies not mentioned by the statute, which was originally enacted almost 60 years ago, well before the advent of the Internet. *Doe v. Eating Recovery Ctr. LLC*, 806 F.Supp.3d 1109, 1112 (N.D. Cal. 2025).

Instead, all indications point to the California legislature intending the pen register statute to regulate telephonic communications only. CIPA's legislative history reveals legislators' focus on "authoriz[ing] state and local law enforcement to seek emergency orders for pen registers/trap and trace devices used in telephone surveillance[.]" Cal. Assem. Comm. on Privacy & Consumer Prot., Analysis of A.B. 929, 2015-2016 Leg., Reg. Sess. (Apr. 21, 2015). Further, the California legislature has since updated CIPA multiple times to account for "new communication devices," *Smith v. LoanMe, Inc.*, 11 Cal.5th 183, 191 (2021), but has never included IP address information or anything similar. This is unsurprising. IP address information and related metadata is collected innumerable times each second, every time a person loads a webpage.[10] Interpreting the pen register prohibition to apply to this data collection would require websites to collect consent before

---

[10] *See Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) ("standard computer operations require recording IP addresses so parties can communicate with one another over the Internet").

11

providing users access to the webpages they request. Myriad courts have recognized that nothing in the statute shows the legislature intended such a result.[11]

Further, Plaintiffs' interpretation of CIPA is in tension with the California Consumer Privacy Act ("CCPA"), which allows the collection of users' personal data, subject to procedural formalities, when "reasonably necessary and proportionate to achieve the purposes for which the personal information was collected or processed[.]" Cal. Civ. Code § 1798.100(c). Plaintiffs cannot seriously dispute that collecting IP address and metadata is "reasonably necessary" to provide Curriculum Associates' web-based products. To the extent the CCPA and CIPA conflict on this point, the CCPA controls as the more recent and specific statute. *See Lopez v. Sony Elecs., Inc.*, 5 Cal.5th 627, 634 (2018) ("If conflicting statutes cannot be reconciled, later enactments supersede earlier ones and more specific provisions take precedence over more general ones.").

***Not a Pen Register Device***. Even assuming *arguendo* this Court has jurisdiction and the pen register statute applies to IP address information and related metadata, Plaintiffs' claim would nonetheless fail because Curriculum Associates' products fall outside the definition of a "pen register" device. CIPA defines "[p]en register" to mean "a device or process that records or decodes" certain information "transmitted by an instrument or facility from which a wire or

---

[11] *See, e.g.*, *Licea v. Hickory Farms, LLC*, 2024 WL 1698147, at *4 (Cal. Super. Ct. L.A. Cnty. Mar. 13, 2024) (sustaining demurrer because "public policy strongly disputes" the notion that "every single [website] voluntarily visited by a potential plaintiff" has "violat[ed]" CIPA's pen register prohibition by collecting plaintiff's "IP address for purposes of connecting the website"); *see also* Order at 4, *Levings v. Open Text Corp.*, No. 24STCV05440 (Cal. Super. Ct. L.A. Cnty. Sep. 3, 2024) ("[T]he [operative complaint] is merely describing what happens every time a user accesses any website."); Order at 3, *Rodriguez v. Plivo Inc.*, No. 24STCV08972 (Cal. Super. Ct. L.A. Cnty. Oct. 2, 2024) (similar); Order at 3, *Scharon v. Paramount Glob.*, No. 25STCV10585 (Cal. Super. Ct. L.A. Cnty. Oct. 3, 2025) (similar); Order at 5, *Sanchez v. Letter Four*, No. 24STCV18924 (Cal. Super. Ct. L.A. Cnty. Apr. 17, 2025) (similar). Courts examining the Federal Pen Register Act—upon which the California pen register statute was modeled—have reached similar conclusions. *See, e.g.*, *Capital Records Inc.*, 2009 WL 1664468, at *1, *3 (finding that an "IP address is transmitted as part of the normal process of connecting one computer to another over the Internet" and consequently, "the Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them. If it did apply in those cases, then the Internet could not function"); *see also* *Malibu Media, LLC v. Pontello*, 2013 WL 12180709, at *3–4 (E.D. Mich. Nov. 19, 2013) (the Pen Register Act does not prevent a third party from accessing a user's IP address because, by using the website, the user consensually engaged and "communicated his IP address").

electronic communication is transmitted[.]" Cal. Penal Code § 638.50(b). As the Northern District of California held just last month, this definition "necessarily applies only to a device or process **separate from** the source of the transmitted communications." *In re Apple Data Priv. Litig.*, 2026 WL 146025, at *3 (N.D. Cal. Jan. 20, 2026) (emphasis added). But here, Plaintiffs impermissibly contend Curriculum Associates' products are **both** the pen register devices **and** the sources of the data about students which is allegedly collected. *See, e.g.*, Compl. ¶ 401 (Curriculum Associates' "[p]roducts are 'pen registers'"); ¶ 8 ("When a student interacts with the i-Ready platform for a diagnostic assessment or a personalized instruction lesson, those interactions cause information about the student and the student's activity to be generated [and] recorded[.]").

Accordingly, Plaintiffs' CIPA pen register claim should be dismissed with prejudice.

### C.     Plaintiffs Lack CDAFA Standing and Fail to State a Claim (Count V).

The California legislature enacted the CDAFA as an "anti-hacking statute" designed to "prohibit the unauthorized use of any computer system for improper or illegitimate purpose[s]." *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D.Cal. Dec. 7, 2015). CDAFA thus exists to combat the "proliferation of computer crime[s]," Cal. Penal Code § 502(a)—a fundamental mismatch with Plaintiffs' theory, which focuses on the purported collection of data about students while using a web-based service. Unsurprisingly, then, Plaintiffs both lack statutory standing and have not otherwise stated this claim.

***No Statutory Standing***. Plaintiffs lack statutory standing to bring their CDAFA claim. CDAFA claims require a showing of "damage or loss," *id.* § 502(e)(1), which the "majority of courts" interpret to mean "some damage to the computer system, network, program, or data contained on [plaintiff's] computer[.]" *Heiting*, 709 F.Supp.3d at 1020-21. The Complaint pleads no such damage. Plaintiffs allege only that Curriculum Associates "was unjustly enriched by acquiring the valuable personal information of Plaintiffs . . . without permission and using it for

Curriculum Associates' own financial benefit to advance its business interests." Compl. ¶ 414. This does not confer CDAFA standing.

To start, this allegation is conclusory: there are no factual allegations that Curriculum Associates profited from selling the contested data to data brokers or using it to advertise. This theory of "damage or loss" is also fundamentally a privacy violation theory, which does not confer CDAFA standing. *See, e.g.*, *Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *9–10 (N.D. Cal. July 8, 2024) (no CDAFA standing where plaintiff alleged that "Defendants took something of value from Plaintiff . . . and derived benefit therefrom without Plaintiff's . . . knowledge or informed consent and without sharing the benefit"); *Heiting*, 709 F.Supp.3d at 1020–21 (collecting cases holding privacy violations based on data loss "do not qualify [as 'damage or loss'] under the statute"); *Doe v. Tenet Healthcare Corp.*, 789 F.Supp.3d 814, 845 (E.D. Cal. June 9, 2025) (finding no standing where plaintiffs alleged "their medication information has economic value and that defendants unjustly profited from" obtaining it); Order at 15, *Reisberg v. Renaissance Learning, Inc.*, Case No. 8:25-cv-01379-FWS-JDE (C.D. Cal. Feb. 17, 2026), Dkt. No. 59 (holding substantially identical CDAFA allegations by Plaintiff Reisberg against another edtech company were "too attenuated, conclusory, and speculative" to plead standing).

***Failure to Plead Required Elements***. Even assuming *arguendo* Plaintiffs have statutory standing, they would still have failed to plead a claim under CDAFA section 502(c)(2), which proscribes "knowingly access[ing] and without permission tak[ing], cop[ying], or making use of any data from a computer[.]"

***First***, Plaintiffs cannot satisfy the intent requirement of section 502(c)(2). Their allegation that Curriculum Associates acted "knowingly" "without permission" in processing student data, Compl. ¶ 413, is contradicted by the Complaint's admission that Curriculum Associates "relie[d]

14

on the consent of school personnel" when doing so. *See id.* ¶ 15. Insofar as Plaintiffs seek to skirt this issue in their Opposition by claiming they need not show Curriculum Associates acted "knowingly . . . without permission," they are mistaken; Supreme Court, Ninth Circuit, and California appellate precedent counsel that "knowingly" in section 502(c)(2) modifies "without permission."[12] Indeed, two Federal District Courts relied on this authority to hold, as recently as last month, that "the phrase 'knowingly and without permission' . . . requires that an individual be aware that they are using data or accessing a computer **and** that they are doing so without permission." *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *4 (N.D. Cal. Jan. 12, 2026) (dismissing CDAFA claim where plaintiffs failed to allege defendant "knew its use and access [to plaintiff's computer systems] was without the user's permission"); *Briskin v. Shopify, Inc.*, 2026 WL 161441, at *6 (N.D. Cal. Jan. 21, 2026) (same).

**Second**, CDAFA defines "[a]ccess" to mean "to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." Cal. Penal Code § 502(b)(1). "While [CDAFA] has been extended by some district courts outside of the traditional hacking realm," courts still require a showing that "defendant in some way caused output from the function of a computer, without the owner's permission." *Heiting*, 709 F.Supp.3d at 1020. Plaintiffs do not allege that Curriculum Associates collected data from or accessed parts of their children's computers **outside** of Curriculum Associates' products. *See id.* (dismissing

---

[12] *Cf. United States v. Olson*, 856 F.3d 1216, 1218 (9th Cir. 2017) ("Courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element") (quoting *Flores-Figueroa v. United States*, 556 U.S. 646, 652 (2009)); *see also Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069-70 (9th Cir. 2016) (endorsing this view by finding a CDAFA violation where defendant accessed plaintiff's computers after receiving a cease-and-desist letter because only then did defendant "kn[o]w that it no longer had permission" to do so); *People v. Hawkins*, 98 Cal.App.4th 1428, 1438 (2002) (use of the word "knowingly" in the CDAFA statute "imports . . . an awareness of the facts which bring the proscribed act within the terms of the statute," meaning that "knowingly" modifies each element of the statutory prohibition) (quoting *People v. McDaniel*, 22 Cal.App.4th 278, 285 (1994)), *as modified on denial of reh'g* (July 2, 2002).

CDAFA claim for failure to satisfy "access" element because (i) plaintiff did not allege "that [d]efendant implanted anything on her computer" or otherwise "make clear how any 'access' took place" and (ii) plaintiff only described data collection by defendant when she engaged with defendant's website). Thus, Plaintiffs' CDAFA claim should be dismissed.

### D.    Plaintiffs' Massachusetts Privacy Act Claim Fails For Multiple, Independent Reasons (Count VI).

Plaintiffs' invasion of privacy claim under the Massachusetts Privacy Act ("MPA") is based on a theory of public disclosure of private facts.[13] Compl. ¶ 422. Because the MPA penalizes only "unreasonable, substantial or serious interference" with privacy, Mass. Gen. Laws ch. 214, § 1B, Massachusetts courts require disclosure of facts "of a highly personal or intimate nature when there exists no legitimate, countervailing interest." *Doe v. Brandeis Univ.*, 177 F.Supp.3d 561, 616 (D. Mass. 2016) (citations omitted). Plaintiffs' claim fails because Plaintiffs (1) do not allege the disclosure of facts "of a highly personal or intimate nature" and (2) do not allege Curriculum Associates had no legitimate, countervailing interest.

***No Personal, Highly Intimate Facts***. Courts routinely dismiss MPA claims for failure to plead disclosure of highly personal or intimate facts. *See Branyan v. Sw. Airlines Co.*, 105 F.Supp.3d 120, 126 (D. Mass. 2015) ("A person's name, home address, and employer are hardly facts of a highly personal or intimate nature"); *Marchuk v. Long*, 2025 WL 944454, at *3 (D. Mass. Mar. 3, 2025) ("email address and business associates"); *Sheehan v. Town of Carver, MA*, 2025 WL 1333711, at *35 (D. Mass. May 7, 2025) (photoshopped images and home addresses). Highly

---

[13] Plaintiffs characterize their invasion of privacy claim as "dissemination of facts of a private nature," not intrusion upon seclusion. *See* Compl. ¶ 422. To the extent Plaintiffs may argue they instead allege a claim of intrusion upon seclusion, Plaintiffs fail to plead facts concerning any bodily or physical intrusion, falling "well short of the type of intensely personal intrusion that courts have required for an invasion of privacy to constitute a cause of action." *Latimore v. Houle*, 2018 WL 1972784, at *9 (D. Mass. Apr. 26, 2018); *see also Axford v. TGM Andover Park, LLC*, 2021 WL 681953, at *13 (D. Mass. Feb. 22, 2021) ("Intrusion upon seclusion typically involves unwanted surveillance or other *physical* invasions, unwanted contact constituting harassment, or bodily intrusions such as drug testing.").

personal or intimate facts are those that implicate a person's body, familial relationships, or finances. *See Burns v. City of Worcester*, 772 F.Supp.3d 109, 144 (D. Mass. 2025) ("marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments").

Plaintiffs allege Curriculum Associates invaded their privacy by collecting and disclosing information from Plaintiffs' use of Curriculum Associates' educational products.[14] Compl. ¶ 424. This educational information does not rise to the level of bodily, financial, or familial relationship information Massachusetts courts have found to be "highly personal or intimate." Rather, it is akin to the data—such as names, home addresses, employers, and business associate information—that Massachusetts courts have rejected as insufficient to state an MPA claim.

***Legitimate, Countervailing Interest***. The MPA applies only where there is no legitimate, countervailing interest because "[t]he statute obviously was not intended to prohibit serious or substantial interferences which are reasonable or justified." *Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 518 (1991). MPA claims must be dismissed where there is a legitimate, countervailing interest. *See Squeri v. Mount Ida Coll.*, 2019 WL 2249722, at *2 (D. Mass. May 24, 2019). *Squeri* is most instructive here. In that case, the court granted defendant's motion to dismiss an invasion of privacy claim against a university based on its disclosure of "sensitive and private student academic data" because there was a legitimate business reason for the university to transfer this information. *Id.* Here, Plaintiffs implicitly concede that Curriculum Associates had a legitimate interest in collecting and disclosing the information—to fulfill its business purpose of providing "digital products . . . which provide student assessment, instruction, and data analytics." Compl. ¶¶ 2-4. Plaintiffs allege Curriculum Associates collected information

---

[14] Specifically, Plaintiffs allege disclosure of "performance, progress, and proficiency in various subject-matter domains; how their performance, progress, and proficiency compares with their peers; conclusions about their learning difficulties or weaknesses in subject-matter domains; predictions about their growth potential; and data about online searches they perform, files they upload or download, and online content they consume." Compl. ¶ 424.

17

to perform its essential function: to "provide personalized lessons based on the student's individual skill level," reports about "the time a student spent on lessons," and alerts for "when a student needs additional support." *Id.* ¶¶ 58-59. Plaintiffs also allege Curriculum Associates disclosed information to service providers to perform essential business functions such as "hosting; information technology; customer support" and "single-sign-on." *Id.* ¶¶ 167, 179. The MPA is not intended to prohibit the collection and disclosure of information in support of this legitimate, countervailing business interest. Therefore, Plaintiffs fail to plead an unreasonable, substantial, or serious interference with their privacy.[15]

### E.    Plaintiffs' 93A Claim Fails Because They Do Not Plead Cognizable Injury or Conduct of Trade or Commerce (Count IX).

Massachusetts bars "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mass. Gen. Laws ch. 93A, § 2. To successfully plead a 93A claim, plaintiffs must "sufficiently plead economic injury" that is a "separate, identifiable harm arising from the violation itself." *Brown v. Bank of Am., Nat'l, Ass'n,* 67 F.Supp.3d 508, 514 (D. Mass. 2014). "[F]ederal courts also have routinely rejected claims of injury under Chapter 93A that were not grounded in any objective measure." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 13 (1st Cir. 2017). Plaintiffs appear to allege they suffered economic injury in the form of diminution of value of their personal information. Compl. ¶ 494.[16]

---

[15] Notably, Plaintiffs' allegations are tailored to a recitation of the legal standard for the *Wisconsin* tort of intrusion, apparently reusing allegations from a different complaint. Compl. ¶¶ 424, 428, 429, 430 (repeating Wisconsin's "highly offensive to a reasonable person" standard). Plaintiffs' conclusory allegations form only a bare recitation of the elements under the Massachusetts Right to Privacy Act. *Id.* ¶ 422 (reciting the Massachusetts requirements for "a gathering and dissemination of facts of a private nature").

[16] To the extent Plaintiffs may argue their loss of privacy constitutes an injury-in-fact, Compl. ¶¶ 485, 487, this argument fails because the injury must be a separate identifiable harm ***arising from*** the unfair or deceptive act, not the unfair or deceptive act ***itself***. *Brown*, 67 F.Supp.3d at 514. Plaintiffs' 93A claim also cannot rest on their negligence allegations. *See RTR Techs., Inc. v. Helming*, 815 F.Supp.2d 411, 434 (D. Mass. 2011) ("Negligence is not a sufficient basis for a 93A claim; something more is required.").

18

***Failure to Plead Cognizable Economic Injury***. Plaintiffs fail to plead economic injury. They offer no objective measure for the diminution of value of their information, providing only the bare assertion that plaintiffs have "suffered injury-in-fact . . . as a result of . . . the unauthorized disclosure and taking of their personal information which has value as demonstrated by its use and sale by Curriculum Associates . . . [and] have suffered harm in the form of diminution of the value of their private and personally identifiable data and content." Compl. ¶ 494.[17] This Court rejected this very theory of injury in *Priddy v. ZOLL Med. Corp.*, 2025 WL 975234, at *8 (D. Mass. Mar. 31, 2025). In *Priddy*, plaintiffs alleged their information had "inherent value" which they were "deprived of" when that information was disclosed. *Id.* This Court, as it has before, should reject Plaintiffs' theory of injury in diminution of value of information because, like the Plaintiffs in *Priddy*, there is no basis for their allegation that the value of their information "is diminished by the mere fact that others might gain something from that information," particularly where Plaintiffs "have not alleged that they have ever attempted to sell their Private Information or that their ability to do so has been hampered by [the disclosure]." *Id.*

***No "Trade or Commerce."*** Plaintiffs' 93A claim also fails because the alleged unfair and deceptive acts were not in the conduct of "trade or commerce." Mass. Gen. Laws ch. 93A, § 2. "[S]ome business connection between the parties is an essential element of liability under the statute." *John Boyd Co. v. Bos. Gas Co.*, 775 F.Supp. 435, 440 (D. Mass. 1991); *see also Steinmetz v. Coyle & Caron, Inc.*, 862 F.3d 128, 141 (1st Cir. 2017) ("[S]ome business, commercial, or transactional relationship is required even for a claim brought under section 9."). For example, in *Morrissey v. New England Deaconess Association—Abundant Life Communities, Inc.*, a construction developer trespassed on plaintiff's land for a construction project. 90 Mass.App.Ct.

---

[17] In addition to their 93A claim, Plaintiffs' failure to allege injury-in-fact is also fatal to their Article III standing. *See Loughlin v. Vi-Jon, LLC*, 728 F.Supp.3d 163, 180 (D. Mass. 2024).

19

1105 (2016) (table decision). The plaintiff there had no business relationship with defendant construction company and the plaintiff's injuries did not arise "in trade or commerce" but rather in the "execution of the construction," a trespass for which defendants "could be liable in tort" but *not* under 93A. *Id.* at \*4. Similarly here, Plaintiffs fail to allege any business relationship with Curriculum Associates. They do not allege that they sold information to Curriculum Associates or purchased any product from the company; Curriculum Associates' business relationship is with the **Plaintiffs' schools**. Thus, there is no plausible allegation that "trade or commerce" between Plaintiffs and Curriculum Associates caused Plaintiffs' injuries.

### F.    Plaintiffs Fail to Plead Unjust Enrichment (Count VII).

A Massachusetts unjust enrichment claim requires: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009), *decision clarified on denial of reh'g,* 559 F.3d 1 (1st Cir. 2009).[18] Principles of "equity and morality" guide the unjust enrichment analysis. *Id.* (quoting *Salamon v. Terra*, 394 Mass. 857, 859 (1985)). Plaintiffs' adequate remedy at law and failure to plead "unjust enrichment of one party and unjust detriment to another party" compel dismissal. *Id.*

**Adequate Remedies at Law.** Lack of an adequate remedy at law under contract or statute is a prerequisite to state an unjust enrichment claim. *See In re LastPass Data Sec. Incident Litig.*, 742 F.Supp.3d 109, 129 (D. Mass. 2024) (dismissing unjust enrichment claim because Chapter 93A claim presented an adequate remedy at law). Moreover, "[i]t is the **availability** of a remedy at

---

[18] State courts have also articulated this test as follows: "(1) [plaintiffs] conferred a measurable benefit upon the defendant; (2) [plaintiffs] reasonably expected compensation from the defendant; and (3) the defendant accepted the benefit with the knowledge, actual or chargeable, of the plaintiff's reasonable expectation." *Tedeschi-Freij v. Percy Law Grp., P.C.*, 99 Mass.App.Ct. 772, 780 (2021). Plaintiffs' claim falls short under either formulation.

law, not the *viability* of that remedy, that prohibits a claim for unjust enrichment," *Shaulis*, 865 F.3d at 16, justifying dismissal on the pleadings alone and making it inappropriate to permit pleading unjust enrichment in the alternative, *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 69 (1st Cir. 2020); *see also Reed v. Zipcar, Inc.*, 883 F.Supp.2d 329, 334 (D. Mass. 2012) (noting that the viability of the remedy at law "is beside the point" and the "mere availability" of a remedy at law bars a claim for unjust enrichment), *aff'd*, 527 F.App'x 20 (1st Cir. 2013).

The First Circuit has confirmed that Chapter 93A claims, like Plaintiffs', provide an adequate remedy. *See Schuster v. Wynn Ma, LLC*, 118 F.4th 30, 39 (1st Cir. 2024) ("We have previously held that Chapter 93A provides an adequate legal remedy for similar unjust enrichment claims. Here, Schuster's unjust enrichment claim seeks to redress the same injury as that alleged under Chapter 93A, and, therefore, the claim was properly dismissed."); *see also Tomasella*, 962 F.3d at 84 ("Tomasella's unjust enrichment claims must be dismissed because an adequate remedy at law was undoubtedly available to her through Chapter 93A."). Because Plaintiffs have an adequate remedy at law under Chapter 93A, the Court must dismiss their unjust enrichment claim.

*No Measurable Benefit.* Even if the Court were to allow Plaintiffs to plead their unjust enrichment claim in the alternative to their legal claims (it should not), Plaintiffs' vague allegations that Curriculum Associates uses their data for "commercial purposes" is not sufficient to plead a measurable benefit conferred upon Curriculum Associates to sustain their unjust enrichment claim.

Unjust enrichment requires that "a benefit [was] conferred upon the defendant by the plaintiff[.]" *Mass. Eye & Ear*, 552 F.3d at 57; *see also Karp v. Gap, Inc.*, 2014 WL 4924229, at *2 (D. Mass. Sep. 29, 2014) (dismissing unjust enrichment claim where plaintiff alleged The Gap sold their zip code to third party for profit but failed to allege "how the merchant realized economic value"). Here, Plaintiffs have not alleged facts to support that Curriculum Associates has received

21

any measurable benefit. As in *Karp*, the Complaint here at most speculates that Curriculum Associates "monetize[d]" student data, without stating facts explaining how they do so or what measurable value Curriculum Associates otherwise derives from user data. *See* Compl. ¶ 136.

*No Inequitable Benefit.* Plaintiffs' unjust enrichment claim also fails because the manner in which Plaintiffs allege Curriculum Associates uses data does not defy the reasonable expectations of the parties and thus is not inequitable. A plaintiff asserting a claim for unjust enrichment must establish "not only that the defendant received a benefit, but also that such a benefit was unjust, a quality that turns on the reasonable expectations of the parties." *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013) (quoting *Global Investors Agent Corp. v. Nat'l Fire Ins. Co.*, 76 Mass.App.Ct. 812, 826 (2010)).

Massachusetts courts assessing whether retention of a benefit is unjust often consider whether Plaintiffs had a reasonable expectation of compensation for the conferral of a benefit. *See Karp*, 2014 WL 4924229, at *2 (finding no reasonable person would expect compensation for ZIP code collected in a routine credit card transaction, even if useful to defendant for marketing purposes). Here, Plaintiffs did not have a reasonable expectation of compensation for the information they provided through i-Ready Products. Just as the court reasoned in *Karp*, the fact that Curriculum Associates could use the information for its business does not mean that Plaintiffs reasonably expected compensation for that information—information of the type students routinely provide to educators or is collected through ordinary use of the internet. Plaintiffs' vague and factually unsupported assertion that their submission of data constituted their "property and labor," Compl. ¶ 451, does not suffice to establish a reasonable claim for compensation under these circumstances. Finally, Plaintiffs cannot demonstrate that Curriculum Associates' data practices are inequitable because they themselves allege that they received benefits from the i-Ready

Products, including sophisticated educational diagnostic tools and a personalized instruction platform. *See* Compl. ¶¶ 43, 50, 66, 79, 96. The unjust enrichment claim should be dismissed.

### G.    Plaintiffs Fail to Plead a Plausible Negligence Claim (Count VIII).

To state a claim for negligence under Massachusetts law, a plaintiff must plausibly plead that "the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 338 (1st Cir. 2022) (affirming dismissal of negligence claim). Plaintiffs fail to plead causation or damages beyond those disqualified by the economic loss doctrine, and the claim must be dismissed.

*No Actual Damages*. Abstract concerns about possible future impairments of a plaintiff's rights, without actual damages, cannot support a negligence claim. *See Reidy v. Umass Mem'l Med. Ctr., Inc.*, 2021 WL 6777622, at *2–3 (Mass. Super. Ct. June 17, 2021) (dismissing negligence claim for failure to allege any facts that plaintiff's data was at risk of improper disclosure). Plaintiffs here, much like those in *Reidy*, assert only speculative damages of "privacy harms" and "diminution of value" in their personal data, Compl. ¶¶ 458, 477, which are insufficient.

*First*, Plaintiffs' conclusory allegations that Curriculum Associate's data collection and sharing practices resulted in "privacy harms," Compl. ¶ 458, fall far short of the concrete harms required by Massachusetts courts. Plaintiffs allege four types of privacy harms: (1) "invading their privacy" (*id.* ¶¶ 301-307); (2) "compromising the security of their personal information" (*id.* ¶¶ 308-316); (3) "affecting their access to information, opportunities, and other basic rights through algorithmic profiling" (*id.* ¶¶ 317-322); and (4) "forcing them to choose between their right to an education and other fundamental rights" (*id.* ¶¶ 323-329). Plaintiffs, however, present no facts to support these alleged harms, relying on the speculative fear that they might occur in the future.

23

They do not allege that Curriculum Associates' data security systems are deficient, making their conclusory assertion that their data is "vulnerable to a host of data security risks" implausible. *Id.* ¶ 308. Nor do they allege that algorithmic profiling in the i-Ready Products has resulted in any adverse educational decisions against their children. In fact, the Complaint fails to present ***any*** concrete adverse effects associated with its conclusory allegations of privacy violations, which is fatal to its damages claim. *Cf. In re LastPass*, 742 F.Supp.3d at 123 (finding plaintiffs adequately plead damages through concrete allegations of lost time, continued risk to personal data, and costs actually incurred in mitigation efforts); *Walker v. Bos. Med. Ctr. Corp.*, 33 Mass.L.Rptr. 179 (Mass. Super. Ct. Nov. 20, 2015) (same, where it was likely plaintiffs' confidential medical information had been or would be accessed by unauthorized persons).[19]

***Second***, Plaintiffs' claim for negligence damages based on diminution of value in their PII falls with their Chapter 93A claim. *See supra*, § IV.H*; Conley v. Roseland Residential Tr.*, 442 F.Supp.3d 443, 460 (D. Mass. 2020) (finding injury insufficiently pled for negligence claim where court rejected the same theory of injury under Chapter 93A).

***No Recovery for Purely Economic Losses.*** Even if the Court were to find Plaintiffs' damages claim for diminution of value in their PII to be sufficiently pled (it should not), the claim is barred under the economic loss doctrine, which prohibits recovery for "purely economic losses . . . in the absence of personal injury or property damage." *Zoll Med. Corp. v. Barracuda Networks, Inc.*, 565 F.Supp.3d 101, 106 (D. Mass. 2021) (quoting *FMR Corp. v. Bos. Edison Co.*, 415 Mass. 393, 395 (1993)); *see also Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458,

---

[19] Insofar as Plaintiffs allege that the "privacy harm" they suffered is the invasion of privacy itself, i.e., Curriculum Associates' collection of Plaintiffs' data, *see* Compl. ¶¶ 301-307, 463, that claim necessarily fails because a negligence injury must be a separate harm ***caused by*** the breach of duty, not the breach ***itself***. *Cf. Webb v. Injured Workers Pharmacy*, LLC, 72 F.4th 365, 376 (1st Cir. 2023). ("To establish standing to pursue damages, the complaint must also plausibly allege a separate concrete, present harm caused by the plaintiffs' exposure to this risk of future harm"). *See also supra*, § IV.H.

469-70 (2009) (affirming dismissal of negligence claim where the "nature of the damages" alleged were pure economic losses). The loss of the value of data "is not a result of physical destruction of property," *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 498 (1st Cir. 2009), such that the economic harm doctrine precludes recovery of that alleged loss.[20]

*No Causal Link*. Plaintiffs also fail to articulate the required element of causation between Curriculum Associates' conduct and their purported injuries. *Stonehill*, 55 F.4th at 338. As discussed above, Plaintiffs' theory of privacy harms fails to separate the negligent act from any separate, concrete harm, thus preventing a finding of causation. *See In re MOVEit Customer Data Sec. Breach Litig.*, 2025 WL 2179475, at *10 (D. Mass. July 31, 2025) ("[C]ausation of a cognizable harm turns on whether a cognizable harm exists."). Further, Plaintiffs do not—and cannot—plead facts alleging that that their diminution of value injury was "a direct and proximate result of Curriculum Associates' negligent actions and [] violations of COPPA."[21] Compl. ¶ 477. *See Priddy*, 2025 WL 975234, at *8 (rejecting diminution in value of data injury where plaintiffs did not allege that they attempted to sell their data or that any attempt would be hampered by defendant). Because Plaintiffs do not plead causation, the negligence claim must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

> Respectfully submitted,
> Curriculum Associates, LLC
> By its attorneys,

---

[20] The only exception to the economic loss doctrine for a fiduciary or "special" relationship does not apply. *See In re LastPass*, 742 F.Supp.3d at 128 (reliance on party's "purported cybersecurity expertise and its promises to keep their data safe" insufficient to form a fiduciary relationship); *Rojas v. Cap. One Fin. Corp.*, 2024 WL 4045376, at *3–4 (D. Mass. Sep. 4, 2024) (customers and credit card providers not a special relationship); *Maxfield v. UKG Inc.*, 2025 WL 1581308, at *4 (D. Mass. June 4, 2025) (same, for payroll company and pay recipients); *Eggiman v. Bank of Am., N.A.*, 2023 WL 2647071, at *4 (D. Mass. Mar. 27, 2023) (same, for bank and customers).

[21] Violation of a statute alone does not establish a breach of duty of care. *See Deutsche Lufthansa AG v. Mass. Port Auth.*, 2018 WL 3466938, at *2 (D. Mass. July 18, 2018) (citing *Juliano v. Simpson*, 461 Mass. 527, 532 (2012)).

Dated: February 27, 2026

COOLEY LLP
*/s/ Matthew D. Brown*
Matthew D. Brown
brownmd@cooley.com
(Admitted *Pro Hac Vice*)
Erik Lampmann-Shaver
elampmannshaver@cooley.com
(Admitted *Pro Hac Vice*)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Naomi Miyeko Harralson May
nmay@cooley.com
(Admitted *Pro Hac Vice*)
10265 Science Center Drive
San Diego, CA  92121-117
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

Stephanie J. Schuyler
sschuyler@cooley.com
(Admitted *Pro Hac Vice*)
Erika P. Brigantti Abraham
(Admitted *Pro Hac Vice*)
ebriganttiabraham@cooley.com
55 Hudson Yards
New York, NY  10001-2157
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

Celene C. Chen
celene.chen@cooley.com
500 Boylston Street
Boston, MA  02116-3736
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

26

## CERTIFICATE OF SERVICE

I, Matthew D. Brown, hereby certify that on this 27th day of February 2026, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants on the Notice of Electronic Filing, and paper copies will be sent to any non-registered participants.

*/s/ Matthew D. Brown*
Matthew D. Brown
