**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

M.C. 1 and M.C. 2, by and through their legal
guardian NICOLE REISBERG, and M.C. 3
and M.C. 4, by and through their legal
guardian LILA BYOCK, individually and on
behalf of all others similarly situated,

        Plaintiffs,

v.

CURRICULUM ASSOCIATES, LLC,

        Defendant.

Civ. No. 1:25-cv-13942-FDS

**REQUEST FOR ORAL ARGUMENT**

**DEFENDANT CURRICULUM ASSOCIATES, LLC'S**
**REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. ARGUMENT.................................................................................................... 1

    A.  Plaintiffs' Federal and State Wiretapping Claims Fail (Counts I-III).................... 1

        1.  The Crime-Tort Exception Cannot Save the First-Party
            Interception Claim .................................................................................. 1

        2.  Plaintiffs Fail to State a Claim Based on Third-Party Interception ........... 2

            a.  Plaintiffs' Section 631(a) Aiding-and-Abetting Claim Fails ........ 2

            b.  Plaintiffs' Section 632 Claim Fails ................................................ 4

    B.  Plaintiffs' CIPA "Pen Register" Claim Fails (Count IV) ...................................... 5

    C.  Plaintiffs Lack CDAFA Standing and Fail to State a Claim (Count V) ................ 7

    D.  The Massachusetts Privacy Act Claim Fails for Multiple Reasons (Count
        VI) ................................................................................................................ 9

    E.  Plaintiffs' 93A Claim Fails Because They Do Not Plead Cognizable Injury
        or Conduct of Trade or Commerce (Count IX) .................................................... 11

    F.  Plaintiffs Fail to Plead Unjust Enrichment (Count VII) ...................................... 12

    G.  Plaintiffs Fail to Plead a Plausible Negligence Claim (Count VIII).................... 14

III. CONCLUSION.................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Data Priv. Litig.*,
  2026 WL 146025 (N.D. Cal. Jan. 20, 2026) ...........................................................................7

*Brown v. Bank of America, Nat'l, Ass'n*,
  67 F. Supp. 3d 508 (D. Mass. 2014) ....................................................................................12

*Burns v. City of Worcester*,
  772 F. Supp. 3d 109 (D. Mass. 2025) ..................................................................................11

*Byars v. Hot Topic, Inc.*,
  656 F. Supp. 3d 1051 (C.D. Cal. 2023) .................................................................................3

*Champa v. Weston Pub. Schs.*,
  473 Mass. 86 (2015) ............................................................................................................10

*Cody v. Boscov's, Inc.*,
  658 F. Supp. 3d 779 (C.D. Cal. 2023) ...................................................................................3

*Costa v. Zurich American Insurance Co.*,
  2024 WL 5057723 (D. Mass. Dec. 10, 2024) ......................................................................13

*Cottle v. Plaid Inc.*,
  536 F. Supp (N.D. Cal. 2021) ................................................................................................9

*D'Angelo v. FCA US, LLC*,
  726 F. Supp. 3d 1179 (S.D. Cal. 2024) ...............................................................................11

*Doe I v. Google LLC*,
  741 F. Supp. 3d 828 (N.D. Cal. 2024) ...................................................................................3

*Doe v. Brandeis Univ.*,
  177 F. Supp. 3d 561 (D. Mass. 2016) ..................................................................................10

*Doe v. Cnty. of Santa Clara*,
  2024 WL 3346257 (N.D. Cal. July 8, 2024).........................................................................9

*Doe v. Eating Recovery Ctr. LLC*,
  806 F. Supp. 3d 1109 (N.D. Cal. Oct. 17, 2025) ..................................................................3

*Doe v. Lawrence Gen. Hosp.*,
  2025 WL 2808055 (D. Mass. Aug. 29, 2025) .....................................................................1, 2

*Doe v. Tenet Healthcare Corp.*,
  731 F. Supp. 3d 142 (D. Mass. 2024) ..................................................................................15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Facebook Internet Tracking Litig.*,
    956 F. 3d 589 (9th Cir. 2020) ...............................................................................................8

*Goldstein v. Rumble, Inc.*,
    2025 WL 3691987 (C.D. Cal. Nov. 6, 2025)..........................................................................4

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ...................................................................................3

*Gutierrez v. Converse Inc.*,
    2025 WL 1895315 (9th Cir. July 9, 2025)..............................................................................3

*Heiting v. Taro Pharms. USA, Inc.*,
    709 F. Supp. 3d 1007 (C.D. Cal. 2023) ...........................................................................7, 8, 9

*John Boyd Co. v. Bos. Gas Co.*,
    775 F. Supp. 435 (D. Mass. 1991) ......................................................................................12

*Johnson v. Blue Nile, Inc.*,
    2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ..........................................................................3

*Jones v. Google LLC*,
    73 F.4th 636 (9th Cir. 2023) ..................................................................................................6

*Jones v. Peloton Interactive, Inc.*,
    720 F. Supp. 3d 940 (S.D. Cal. 2024)....................................................................................3

*Karimi v. Golden Gate Sch. of L.*,
    361 F. Supp. 3d 956 (N.D. Cal. 2019), *aff'd*, 796 F. App'x 462 (9th Cir. 2020) ...................11

*Karp v. Gap, Inc.*,
    2014 WL 4924229 (D. Mass. Sep. 29, 2014) .......................................................................14

*Lass v. Bank of Am., N.A.*,
    695 F.3d 129 (1st Cir. 2012).................................................................................................13

*In re LastPass*,
    742 F. Supp. 3d at 123 .........................................................................................................15

*Licea v. Am. Eagle Outfitters, Inc.*,
    659 F. Supp. 3d 1072 (C.D. Cal. 2023) .................................................................................3

*Licea v. Vitacost.com, Inc.*,
    683 F. Supp. 3d 1118 (S.D. Cal. 2023)..................................................................................3

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Lionetta v. InMarket Media, LLC*,
  798 F. Supp. 3d 139 (D. Mass. 2025) ...............................................................12, 13, 14

*Martin v. Sephora USA Inc.*,
  2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) .........................................................3

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*,
  552 F.3d 47 (1st Cir. 2009)..................................................................................14

*McManus v. Tufts Med. Ctr.*,
  2025 WL 2778025 (D. Mass. Sep. 29, 2025) .........................................................2

*New Jersey v. T.L.O*,
  469 U.S. 325 (1985) (Powell, J., concurring) .........................................................6

*Ocasio-Hernandez v. Fortuno-Burset*,
  640 F.3d 112 (1st Cir. 2011)..................................................................................4

*Portnoy v. Insider, Inc.*,
  2022 WL 16748583 (D. Mass. Nov. 7, 2022) .......................................................11

*Priddy v. ZOLL Med. Corp.*,
  2025 WL 975234 (D. Mass. Mar. 31, 2025)..........................................................12

*Rafferty v. Merck & Co., Inc.*,
  479 Mass. 141 (2018) ...........................................................................................12

*Reisberg v. Renaissance Learning, Inc.*,
  Case No. 8:25-cv-01379-FWS-JDE (C.D. Cal. Feb. 17, 2026), Dkt. No. 59 ...........................7

*Revitch v. New Moosejaw*,
  LLC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .................................................5

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
  2025 WL 1141168 (C.D. Cal. Feb. 27, 2025)...........................................................2

*Small Just, LLC v. Xcentric Ventures LLC*,
  2014 WL 1214828 (D. Mass. Mar. 24, 2014)..........................................................13

*Squeri v. Mount Ida Coll.*,
  2019 WL 2249722 (D. Mass. May 24, 2019).........................................................11

*Taylor v. Swartwout*,
  445 F. Supp. 2d 98 (D. Mass. 2006) ......................................................................10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re TikTok Inc., Minor Privacy Litig.*,
  2025 WL 3628598 (C.D. Cal. Nov. 5, 2025)................................................................6

*United States v. Morel*,
  922 F.3d 1 (1st Cir. 2019)................................................................6

*In re USA Today Co., Inc. Internet Tracking Litig.*,
  2026 WL 932655 (N.D. Cal. Apr. 6, 2026) ................................................................5

*Velasquez v. Bos. Hous. Auth.*,
  2018 WL 3912360 (D. Mass. Aug. 14, 2018) ................................................................10

*Walker v. Bos. Med. Ctr. Corp.*,
  33 Mass. ................................................................15

*Webb v. Injured Workers Pharmacy, LLC*,
  72 F. 4th 365 (1st Cir. 2023)................................................................5, 15

*Williams v. What If Holdings, LLC*,
  2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ................................................................3

**Statutes**

Cal. Penal Code
  § 502(b)(1) ................................................................9
  § 502(e)(1) ................................................................7
  § 502(c)(2) ................................................................7
  § 631(a) ................................................................2, 3
  § 632................................................................5

18 U.S.C. § 2510 et seq. ("ECPA") ................................................................1, 2

Mass. Gen. Laws ch. 93A, § 2 ................................................................12

Mass. Gen. Laws ch. 214, § 1B ................................................................10

## I.    INTRODUCTION

Far from saving their implausibly pleaded claims, Plaintiffs' opposition ("Opposition" or "Opp.") to the motion to dismiss ("Motion" or "Mot.") confirms their mission in this case is purely political: to use litigation to change how technology is used in the classroom. Plaintiffs' policy diatribe argues that Curriculum Associates' ("CA") conduct violates statutes under which Plaintiffs have not brought a claim. Nor could they; those statutes have no private right of action, and Plaintiffs concede that CA relies on longstanding regulatory guidance permitting schools to consent to student data collection. Plaintiffs' manifesto is nothing more than a sideshow to distract from the Complaint's deficiencies, which offer more than sufficient basis to grant the Motion.

## II.    ARGUMENT

### A.    Plaintiffs' Federal and State Wiretapping Claims Fail (Counts I-III)

#### 1.    The Crime-Tort Exception Cannot Save the First-Party Interception Claim

Under the ECPA and CIPA, parties to a communication cannot be liable for "intercepting" it. Mot. at 14. Plaintiffs argue that the crime-tort exception vitiates that party exemption here. Opp. at 13. But that exception applies only when the party "intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *Doe v. Lawrence Gen. Hosp.*, 2025 WL 2808055, at *12 (D. Mass. Aug. 29, 2025) ("*LGH*").

Perhaps recognizing this, Plaintiffs throw "torts" at the proverbial wall (including conversion, Chapter 93A, and "federal and state law") in the hope that something will stick, but none of their allegations support the exception. *See* Opp. at 13. Plaintiffs have not even attempted to plead a claim for conversion or for violations of COPPA or FERPA, the statutes they obliquely refer to, nor could they; those statutes do not contain a private right of action. Plaintiffs have also failed to plausibly plead their state privacy and Chapter 93A claims. *Infra*, § II.D-E. Courts routinely dismiss wiretapping claims under such circumstances. *See Saedi v. SPD Swiss Precision*

*Diagnostics GmbH*, 2025 WL 1141168, at *13 (C.D. Cal. Feb. 27, 2025) (dismissing CIPA and ECPA wiretapping claims where plaintiff failed to plead privacy torts or HIPAA claim).

Even had Plaintiffs adequately pled their Chapter 93A or privacy claims, the exception would still not apply because Plaintiffs fail to allege (1) an ***independent tortious motive*** by CA that is (2) ***separate from the act of interception itself***. Tellingly, Plaintiffs cite no case law from this Circuit—and CA is aware of none—finding analogous allegations to be an "independent tortious intent." *See* Opp. at 13. The law in this jurisdiction is clear: alleged use of third-party "tracking technologies . . . for financial gain" does not satisfy the crime-tort exception. *McManus v. Tufts Med. Ctr.*, 2025 WL 2778025, at *3 (D. Mass. Sep. 29, 2025).

Plaintiffs' attempt to distinguish *LGH* is unavailing. In *LGH*, the court declined to apply the crime-tort exception to defendant's installation of tracking technology and disclosure of data to third parties, i.e., the conduct Plaintiffs point to here, because, even if that conduct was sufficient to state a privacy tort claim, *id*. at *7, the disclosure was not "separate or independent of the intentional act of deploying the web tracking tools," *id*. at *13. So too here: Plaintiffs allege that CA intercepted their communications "for the purpose of . . . committing tortious acts, including invasion of privacy" and "obtaining and exploiting Plaintiffs' data through false and misleading statements" under Chapter 93A. Opp. at 13. Those alleged "tortious intents" are inseparable from the act of interception, and the exception does not apply.

### 2.    Plaintiffs Fail to State a Claim Based on Third-Party Interception
#### a.    Plaintiffs' Section 631(a) Aiding-and-Abetting Claim Fails

Plaintiffs assert that CA can also be held liable for service providers' "interception" of Plaintiffs' communications with it because (1) the service providers are "capable" of using the communications for their own purpose and are thus "third parties," (2) Plaintiffs allege the service providers intercepted Plaintiffs' data "in transit," and (3) CA "aided and abetted" the interception.

Opp. at 12-17. Plaintiffs are incorrect, and their allegations are too conclusory to carry their claim.

**No "Use" by Third Parties**. Plaintiffs are incorrect that "courts have broadly rejected" the "use" test set forth in *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021), in favor of liability whenever a third party is merely "capable" of using data for its own purposes. Opp. at 15. To the contrary, the weight of authority in California federal courts endorses the "use" test,[1] and given that CIPA is a criminal statute, the rule of lenity supports the narrower interpretation of the statute's reach. *See Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. Oct. 17, 2025).[2] Plaintiffs' assertion that they plead "use" of the data by third parties is also incorrect; nowhere do they allege that the third parties at issue actually used any of ***Plaintiffs'*** data for their own purposes. Opp. at 15 (citing, e.g., ¶ 170, that CA "partners with" company that "is a data broker," and ¶ 181, that vendors use data to "develop and enhance their own products" generally, not that they used ***Plaintiffs'*** data for such purpose).

Even under the "capability" test, Plaintiffs' allegations are entirely conclusory. Opp. at 15 (citing vague allegations that, e.g., service providers "can sell" (¶ 204) advertisements or "can assemble" (¶ 235) longitudinal profiles generally, not that they could, or did, as to Plaintiffs). *See Goldstein v. Rumble, Inc.*, 2025 WL 3691987, at *3 (C.D. Cal. Nov. 6, 2025) (dismissing claim

---

[1] *See, e.g., Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1067-68 (C.D. Cal. 2023) (dismissing CIPA claim where plaintiff did not allege "facts to suggest that [third party] intercepted and used the data itself"); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (dismissing CIPA aiding-and-abetting claim, where there "are no facts here to suggest that [third party] intercepted and used the data itself"). *Accord Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1083 (C.D. Cal. 2023); *Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1123-24 (S.D. Cal. 2023); *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782-83 (C.D. Cal. 2023); *Martin v. Sephora USA Inc.*, 2023 WL 2717636, at *12-13 (E.D. Cal. Mar. 30, 2023)*; Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 946 (S.D. Cal. 2024); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 843-44 (N.D. Cal. 2024); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021).

[2] Treating service providers as extensions of the websites they serve is also consistent with the CCPA, which was enacted to govern internet data collection and under which companies that process data for websites need not be disclosed to users. *See Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *2-*3 (9th Cir. July 9, 2025) (Bybee J. concurring) (CCPA, not CIPA, is more applicable to internet data collection, the enacting legislature could not have foreseen the internet, and it has not updated Section 631(a) to address technology despite updating other provisions).

alleging defendant installed Meta Pixel to "target specific users with tailored advertisements" and "increase its advertising presence on other platforms" as too conclusory under "capability" test).

**No In-Transit Interception**. Plaintiffs hang their hat on two cases that have permitted claims to proceed where plaintiffs allege forensic analysis. Opp. at 16. But Plaintiffs concede they conducted no such analysis of M.C.1 or M.C.2's devices, and the Complaint is (tellingly) devoid of any results of the alleged "forensic analysis" conducted as to M.C.4. *Id*. These Plaintiffs cannot bootstrap their claims to M.C.3's allegations, particularly given that the Complaint itself concedes M.C. 3's use of a Google Chromebook and Google Classroom is dispositive as to their data disclosure. Compl. ¶ 227. The other Plaintiffs' "aiding and abetting" wiretapping claims must be dismissed because the only remaining allegations are wholly conclusory recitations of the elements of the claim. *E.g*., Compl. ¶ 189; *see Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 112 (1st Cir. 2011) ("A plaintiff is not entitled to "proceed perforce" by virtue of allegations that merely parrot the elements of the cause of action").

**No Aiding-and-Abetting Liability**. As to M.C.3, Plaintiffs unsuccessfully attempt to evade the concession in their Complaint that CA does not know (let alone intend) the scope of Google's alleged data collection by emphasizing that "i-Ready causes" student data to be sent to Google, but the Complaint concedes Plaintiffs' Chromebooks are the reason for that transmission. *See* Compl. ¶ 233. Thus, CA cannot knowingly aid Google's interception, and the cases CA cited are on point: Where a defendant knowingly "plugged" a third party's technology into its site, if plaintiff doesn't allege defendant "knew [third party's] conduct constituted a breach of some duty" or "the unlawful purpose of" the third party, there can be no aiding-and-abetting liability. Mot. at 17 (citing *Rodriguez v. Ford Motor Co*., 722 F. Supp. 3d 1104, 1123-24 (S.D. Cal. Mar. 21, 2024)).

### b.    Plaintiffs' Section 632 Claim Fails

Likewise, nothing in the Opposition saves Plaintiffs' Section 632 claim. Although Plaintiffs

contend that internet communications can constitute "confidential communications" under CIPA, none of the cases cited in the Opposition—which concern sensitive financial information and personal health information, *see* Opp. at 18—can overcome the "presumption" that Plaintiffs' provision to CA of routine educational data over the internet does not give rise to an expectation of privacy. *See Revitch v. New Moosejaw*, LLC, 2019 WL 5485330, at \*3 (N.D. Cal. Oct. 23, 2019). Plaintiffs argue that their communications are "confidential" because COPPA and FERPA apply to that information. But as explained, *supra*, Plaintiffs do not (and cannot) plead claims under those statutes, and they offer no authority for the proposition that those statutes alone make their interactions with CA's products "confidential" under Section 632.

### B.    Plaintiffs' CIPA "Pen Register" Claim Fails (Count IV)

**<u>No Standing</u>**. Plaintiffs have no Article III standing to bring their pen register claim— which they plead in the alternative to their wiretapping claims. Courts do not recognize a reasonable expectation of privacy in IP addresses or related metadata, *see* Mot. at 18-19 (collecting cases)[3], and these are the only kinds of data at issue, Compl. ¶ 401. Plaintiffs have also failed to allege "a close historical or common-law analogue for their asserted injury" sufficient to confer standing. *See Webb v. Injured Workers Pharmacy, LLC*, 72 F. 4th 365, 372 (1st Cir. 2023). This Court therefore lacks jurisdiction to consider this claim.

Neither of Plaintiffs' arguments justifies a different outcome. ***First***, because Plaintiffs concede CA "relies on the consent of school personnel" to collect and process student data, Compl. ¶ 15, and this approach is consistent with longstanding FTC guidance on COPPA, Mot. at 2, n.2, they have not plausibly pled a COPPA violation sufficient to confer standing.[4] ***Second***, Plaintiffs'

---

[3]*See, e.g.*, *In re USA Today Co., Inc. Internet Tracking Litig.*, 2026 WL 932655, at \*2 (N.D. Cal. Apr. 6, 2026) (no Article III standing for a pen register claim based on alleged disclosure of IP address information).

[4]Plaintiffs' authority does not undermine this analysis. The portion of *Jones v. Google LLC* to which Plaintiffs point concerns preemption, not standing. 73 F.4th 636, 641 (9th Cir. 2023). And while the court in *In re TikTok Inc., Minor*

argument that they only engaged with Curriculum Associates products through "compulsory schoolwork," Opp. at 19-20, is a red herring. The school context is an inherently public setting that carries a diminished expectation of privacy.[5] This supports CA's position that Plaintiffs do not have an expectation of privacy over the at-issue data and therefore lack standing.

**Statute Does Not Apply to IP Address Information**. Even if Plaintiffs have standing, their claim still fails because the pen register statute does not apply to IP addresses. *See* Mot. at 19-21 (the text and legislative history of the statute limit "pen register" to devices used by law enforcement for telephone surveillance). Further, Plaintiffs' argument challenges the very foundation of the modern internet. Visiting a website automatically transmits a user's IP address, *United States v. Morel*, 922 F.3d 1, 9 (1st Cir. 2019), so prohibiting IP address collection without consent—as Plaintiffs ask this Court to do—would bring web browsing to a halt, an argument Plaintiffs do not engage with (and therefore concede). The two arguments Plaintiffs do raise are unavailing. *First*, they cite three Federal District Court cases which permitted pen register claims involving IP addresses to proceed. Opp. at 20. But these cases do not adequately grapple with CIPA's legislative history. *Second*, Plaintiffs argue CA overstates the conflict between the CIPA pen register statute and the CCPA because, here, Plaintiffs "do not bring a CCPA claim." Opp. at 21. This is a misdirect. Plaintiffs offer no reason why this Court cannot consider the consequences of endorsing their novel interpretation of the CIPA pen register statute on existing California laws even where no CCPA claim is brought.

**Not a Pen Register Device**. Plaintiff's claim independently fails because they assert CA's

---

*Privacy Litig.* found alleged COPPA violations relevant to plaintiffs' reasonable expectation of privacy, that case did not involve alleged consent to data processing by school personnel, which is plainly permitted under applicable regulatory guidance. *See* 2025 WL 3628598, at *14-*15 (C.D. Cal. Nov. 5, 2025).

[5] *See New Jersey v. T.L.O*, 469 U.S. 325, 348 (1985) ("In any realistic sense, students within the school environment have a lesser expectation of privacy than members of the population generally.") (Powell, J., concurring).

products are both pen registers and the sources of information purportedly captured by the pen registers. *See* Compl. ¶¶ 8 (referring to the generation of data about students by the i-Ready platform), 401 (CA's "[p]roducts are 'pen registers'"). This cannot be and is grounds for dismissal. *See, e.g.*, *In re Apple Data Priv. Litig.*, 2026 WL 146025, at *3 (N.D. Cal. Jan. 20, 2026) (holding the definition of "pen register" "necessarily applies only to a device or process separate from the source of the transmitted communications"). Plaintiffs respond to this authority by asserting CA misunderstands their allegations. Opp. at 21. But the Complaint is clear. Plaintiffs contend they conducted forensic testing which revealed that i-Ready products "generate" data about students, which is then sent to third parties. *See, e.g.*, Compl. ¶¶ 188-89. Plaintiffs may argue at the hearing that data generated by i-Ready products is distinct from data purportedly transmitted by the pen registers, but this would only underscore how inadequately and confusingly they pled their claim, which should be dismissed. *See, e.g.*, Order at 12, *Reisberg v. Renaissance Learning, Inc.*, Case No. 8:25-cv-01379-FWS-JDE (C.D. Cal. Feb. 17, 2026), Dkt. No. 59 (hereinafter, the "Reisberg Order") (dismissing pen register claim as inadequately pled and implausible where the plaintiffs failed to articulate their theory of violation).

### C.    Plaintiffs Lack CDAFA Standing and Fail to State a Claim (Count V)

**No Statutory Standing**. Plaintiffs lack statutory standing for their CDAFA claim because the statute requires "damage or loss," Cal. Penal Code § 502(e)(1), which "the majority of courts" construe as "damage to the computer system, network, program, or data contained on [plaintiff's] computer[.]" *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020-21 (C.D. Cal. 2023). The Complaint pleads no such damage. Mot. at 23.

Plaintiffs' three counterarguments are unavailing. *First*, Plaintiffs assert they properly plead statutory standing because they allege CA unjustly retains profits derived from processing their data. To start, the Complaint's unjust-profit allegations are conclusory and should be

disregarded. For example, the Opposition cites allegations that CA uses data for "commercial purposes," such as product development, and derives population-level insights which inform how products are marketed. *See, e.g.,* Compl. ¶¶ 5, 138. These allegations do not adequately articulate a nexus between Plaintiffs' specific data and CA's purported profits. And in any event, unjust-profit allegations do not satisfy the standard articulated above, *see Heiting*, 709 F. Supp. 3d at 1020-21, and Plaintiffs' cases are inapposite.[6]

***Second***, Plaintiffs claim they establish statutory standing by asserting "damage and loss due to privacy violations," Opp. at 22, but the weight of authority holds that intangible privacy violations do not confer CDAFA standing. *See* Mot. at 23 (collecting cases). Plaintiffs' sole citation represents a minority view, which incorrectly assumes "that a loss of control over personal data" is a type of "injury . . . contemplated by the [statute]," which in fact concerns "damage to the computer system, network, program, or [its] data[.]" *Heiting*, 709 F. Supp. 3d at 1021.

***Third***, Plaintiffs argue they "plead economic loss" because (i) there is a market for their data and CA did not pay them for it—or alternatively, (ii) CA caused their data to diminish in value. Opp. at 22. These arguments repackage those addressed above and fail for the same reasons. Plaintiffs' nonpayment theory, like their unjust-profits argument, suffers from significant pleading deficiencies. *See, e.g.*, Reisberg Order at 15 (dismissing CDAFA claim against an edtech service provider for lack of standing where plaintiffs asserted defendant was "unjustly enriched" because it used their data for commercial purposes without sharing a portion of the profits, as "too attenuated, conclusory, and speculative"). And Plaintiffs' diminution-of-value argument is not

---

[6] Plaintiffs' cases rely on *In re Facebook Internet Tracking Litig.*, 956 F. 3d 589 (9th Cir. 2020), which concerned altogether different commercial arrangements. It was a direct challenge to Facebook's ad business, through which the company allegedly compiled detailed user profiles and sold them to third parties. *See id.* at 596-601. The profits of those sales were alleged to "constitute[] over 90%" of the company's annual revenue. *Id.* at 600. Not so here. Plaintiffs do not and cannot allege CA sells student data to any third party, let alone that CA's business model is analogous to Facebook's or its profits similarly unjust. CA delivers software that helps schools achieve their educational objectives.

cognizable because it is based on a harm CDAFA does not remedy. *See, e.g.*, *Cottle v. Plaid Inc.*, 536 F. Supp, 3d 461, 488 (N.D. Cal. 2021) (no CDAFA standing based on "loss of the value of [plaintiffs'] data"); *see also Doe v. Cnty. of Santa Clara*, 2024 WL 3346257, at *9 n.7 (N.D. Cal. July 8, 2024) (where, as here, "plaintiffs allege that their privacy has been invaded because of the disclosure of" particularly sensitive information, "plaintiffs cannot base their CDAFA damages on a theory that they lost a benefit to sell that data themselves.").

**Failure to Plead Required Elements**. Plaintiffs have also failed to plead two necessary elements under CDAFA section 502(c)(2): *First*, Plaintiffs have not pled intent. Their contention that CA acted "knowingly" "without permission" when collecting student data, Compl. ¶ 413, is contradicted by their admission that CA "relie[d] on the consent of school personnel" to do so. *Id.* ¶ 15. Plaintiffs' passing reference to the mistake-of-law doctrine, Opp. at 22, is irrelevant and does not relieve them of their pleading burden. *Second*, the Complaint does not adequately allege "access" under CDAFA. *See* Mot. at 24. Plaintiffs do not dispute this requirement, Cal. Penal Code § 502(b)(1); they merely take issue with CA's citation to *Heiting*, Opp. at 23. But *Heiting* is plainly relevant. There, the court found the plaintiff did not properly plead the "access" element because she did "not make clear how any 'access' took place" and specifically did not allege "that Defendant implanted anything on her computer." *Heiting*, 709 F. Supp. 3d at 1020. The same is true about Plaintiffs' Complaint—and their CDAFA claim should similarly be dismissed.

### D.    The Massachusetts Privacy Act Claim Fails for Multiple Reasons (Count VI)

Plaintiffs fail to plead disclosure of personal, highly intimate facts and no legitimate countervailing interest. *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 616 (D. Mass. 2016).

**No Personal, Highly Intimate Facts**. Any Massachusetts claim for invasion of privacy must be "based on the *disclosure* of sensitive, private information, not the tortious or illegal acquisition thereof," *Taylor v. Swartwout*, 445 F. Supp. 2d 98, 104 (D. Mass. 2006) (emphasis

added). Plaintiffs' Complaint pleads limited factual allegations regarding the actual disclosure of information.[7] In their Opposition, Plaintiffs attempt to plead that CA discloses "Special Education status" and information regarding "learning difficulties." Opp. at 23-24. Plaintiffs cannot amend their Complaint through their Opposition. *Velasquez v. Bos. Hous. Auth.*, 2018 WL 3912360, at *2 (D. Mass. Aug. 14, 2018). Plaintiffs allege they conducted forensic testing, but fail to plead that CA disclosed special education status or information regarding learning difficulties. *See supra*, n.7. The only mention of Special Education, Compl. ¶ 118 b.viii., refers to CA's alleged ***collection*** of this data, and the only reference to "learning difficulties" comes from a conclusory statement with no supporting allegations, *id.* ¶ 424.[8] Those bare conclusions are not sufficient to state a claim.

CA is aware of no ruling by a Massachusetts court that the routine educational data and metadata Plaintiffs allege CA disclosed, *supra* n.6, constitutes personal, highly intimate facts. Plaintiffs argue that because ***other*** statutory systems may treat such data as confidential, this Court should do so under the MPA, but they cite no authority for that leap. Opp. at 24. In fact, other courts have found that disclosure of similar data is ***not*** sufficiently sensitive to constitute an invasion of privacy. *See D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1206 (S.D. Cal. 2024) (finding user name, IP address, geographic location, and prior sites visited not sensitive data); *Karimi v. Golden Gate Sch. of L.*, 361 F. Supp. 3d 956, 980 (N.D. Cal. 2019), *aff'd*, 796 F. App'x 462 (9th Cir. 2020) (disclosure of a law student's suspension was not an "intimate detail").

**Legitimate, Countervailing Interest**. Plaintiffs argue that dismissal based on a legitimate, countervailing interest is improper on the pleadings. Opp. at 25. But Plaintiffs' cited cases relate

---

[7] *See* Compl. ¶¶ 189, 233-37, 246-52 (describing categories of data allegedly sent to Google, including "persistent identifiers," pages visited, session time, device and browser information, grade level, lesson name, and outcome).

[8] Because Plaintiffs failed to allege disclosure of student disability status, Plaintiffs' citation to *Champa v. Weston Pub. Schs.*, 473 Mass. 86, 97 (2015)*,* about access to settlements with students with disabilities, is inapposite.

to traditional, highly intimate privacy interests—the home and medical records—which are not present here. *Id.* (citing cases). In contrast, invasion of privacy claims over less sensitive information—drug test information, sexual encounters, education records—are resolved on motions to dismiss because of legitimate, countervailing interests. *Burns v. City of Worcester*, 772 F. Supp. 3d 109, 144 (D. Mass. 2025) (dismissing claim regarding drug test); *Portnoy v. Insider, Inc.*, 2022 WL 16748583, at *11 (D. Mass. Nov. 7, 2022) (same for sexual encounters); *Squeri v. Mount Ida Coll.*, 2019 WL 2249722, at *2 (D. Mass. May 24, 2019) (same for education records).[9]

The Complaint concedes that personal information is disclosed for reasons essential to CA's educational business, including "hosting; information technology; customer support; data security," Compl. ¶ 167, and to improve CA's products through "adaptive learning" and "behavioral analytics," *id*. ¶ 462. Plaintiffs argue, without support, that even if CA had a legitimate interest, its disclosure exceeded it. Opp. at 25. But the only such disclosure alleged is that of metadata to Google, *id.*, which as discussed above is not highly sensitive.

### E.    Plaintiffs' 93A Claim Fails Because They Do Not Plead Cognizable Injury or Conduct of Trade or Commerce (Count IX)

**No Cognizable Injury.** This Court has already rejected Plaintiffs' "diminution in value" theory of injury. *See Priddy v. ZOLL Med. Corp.*, 2025 WL 975234, at *7 (D. Mass. Mar. 31, 2025) (dismissing claim where plaintiff failed to allege any "attempt to sell their Private information or that their ability to do so has been hampered"). Here too, Plaintiffs do not claim they attempted to sell their data.[10] Compl. ¶ 494. Plaintiffs argue *Priddy* does "not concern 93A," but *Priddy's* injury-in-fact analysis about a theory virtually identical to Plaintiffs' is on point. Plaintiffs attempt to

---

[9] Plaintiffs unsuccessfully seek to differentiate *Squeri*, but that case is most analogous—the court dismissed an invasion of privacy claim regarding similar educational data on the basis of a countervailing educational interest.

[10] Plaintiffs attempt to argue in a footnote that they were "deprived of the ability to choose how they would monetize their data." Opp. at 21 n.10. But their allegations only speculate that they "would" do so. Compl. ¶ 332. They fail to allege that they *have* attempted to sell that data or that CA *prevented* them from entering the market to do so.

analogize their theory of injury to that of receiving excessive phone calls, *see* Opp. at 27, but *Priddy* is far more apposite. *Lionetta v. InMarket Media, LLC*, 798 F. Supp. 3d 139, 154 (D. Mass. 2025) is also inapplicable, as the injury in that case was the actual, undisclosed **sale** of plaintiffs' data, which Plaintiffs do not (and cannot) allege.

Plaintiffs also fail to show how their injury is a "separate, identifiable harm arising from the violation itself." *Brown v. Bank of America, Nat'l, Ass'n*, 67 F. Supp. 3d 508, 514 (D. Mass. 2014). Plaintiffs argue that because the harm is the disclosure of data to third parties, it is separate from the collection. Opp. at 27, n.8. Not so. The "deceptive" act alleged encompasses **both** CA's collection **and** disclosure. *See* Compl. ¶488. Plaintiffs have not pled a separate, identifiable harm.

**No "Trade or Commerce."** Plaintiffs' 93A injuries must arise from unfair or deceptive practices in "trade or commerce," Mass. Gen. Laws ch. 93A, § 2, which requires "some business connection between the parties," *John Boyd Co. v. Bos. Gas Co.*, 775 F. Supp. 435, 440 (D. Mass. 1991). Plaintiffs seek to establish this connection by citing inapplicable cases, including *Rafferty v. Merck & Co., Inc.*, 479 Mass. 141, 161 (2018), which noted sufficient business connections between consumers and manufacturers in **failure to warn cases**. Opp. at 28. Plaintiffs cite *Costa v. Zurich American Insurance Co.*, 2024 WL 5057723, at *4 (D. Mass. Dec. 10, 2024), which does not analyze the "trade or commerce" requirement at all, and *Small Just, LLC v. Xcentric Ventures LLC*, 2014 WL 1214828, at *9 (D. Mass. Mar. 24, 2014), where the Court upheld the claim based on **interference** in trade or commerce—which Plaintiffs do not allege. Plaintiffs cite no authority for their theory that they can bring a 93A claim as mere "third-party beneficiaries" to contracts.

## F.    Plaintiffs Fail to Plead Unjust Enrichment (Count VII)

**Adequate Remedies at Law.** The Opposition ignores binding First Circuit law that a Chapter 93A claim is an adequate remedy at law sufficient to dismiss an unjust enrichment ("UE") claim. Mot. at 29-30 (citing *Schuster v. Wynn Ma, LLC*, 118 F.4th 30, 39 (1st Cir. 2024); *Tomasella*

*v. Nestle USA, Inc.*, 962 F.3d 60, 69 (1st Cir. 2020)). Plaintiffs cite non-binding trial court decisions in conflict with that precedent. *See* Opp at 29 (citing *Shedd v. Sturdy Mem'l Hosp., Inc.*, 2022 WL 1102524, at *11 (Mass. Super. Ct. Apr. 5, 2022); *Vass v. Blue Diamond Growers*, 2015 WL 9901715, at *11 (D. Mass. Aug. 11, 2015) (noting a then-existing "split of authority" since resolved by the First Circuit)). None of Plaintiffs' remaining cited cases permit alternative pleading of an UE claim alongside adequate legal remedies. *See Lionetta*, 798 F. Supp. 3d at 154 (not addressing adequacy of remedy at law); *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012) (permitting pleading of UE claim on ***separate basis*** from legal claim).

**No Measurable Benefit Conferred.** Plaintiffs also do not plausibly allege a benefit conferred on CA. Mot. at 30-31. Although Plaintiffs argue that they "allege numerous ways in which CA monetized their data," Opp at 30, a closer look at the cited allegations reveals nothing more than speculation and conclusory assertions—a far cry from the required specific, plausible showing that CA received a measurable economic benefit from Plaintiffs' data.[11]

Plaintiffs' legal support similarly fails. Plaintiffs cite *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009), for the proposition that misuse of confidential information ***may*** lead to unjust enrichment. Opp. at 30. But the Complaint does not support "that [defendant] used [plaintiff's] confidential information at [plaintiff's] expense." *Id*. Plaintiffs also rely on *Lionetta*, even though defendant's business in that case was the direct sale of consumer data, and Plaintiffs do not (and cannot) allege CA sells their data. 798 F. Supp. 3d at 145-46. *Karp v. Gap, Inc.* is most applicable. 2014 WL 4924229, at *2 (D. Mass. Sep. 29, 2014) (dismissing UE claim where plaintiff failed to allege "how the merchant realized economic value"

---

[11]*See also* Compl. ¶¶21, 35 (conclusory assertions about how CA uses student data); *id*. ¶¶61, 63, 74, 76, 85-87, 90, 108, 111 (describing how i-Ready data is used to support Plaintiffs' educational goals); *id*. ¶¶136-150 (recounting CA's public privacy notice); *id*. ¶¶150-165, 317, 321 (alleging CA built "intimate data profile" but not that it shared profile); *id*. ¶¶166-189 (illustrating disclosed data sharing practices for technological and analytic support purposes).

from data collection incidental to its core business).

**Not Inequitable.** Contrary to Plaintiffs' assertions, *Lionetta*'s analysis on inequitable benefit also compels dismissal here. There, the defendant's complete failure to disclose that it sold data collected through various digital platforms drove the court's finding that its enrichment was inequitable, 798 F. Supp. 3d at 153, whereas here, the Complaint alleges that CA publicly discloses its privacy notice and makes no allegation of data sales. Compl. at ¶140. Moreover, Plaintiffs concede by failing to address CA's argument that Plaintiffs themselves allege that they received benefits from the i-Ready Products, including sophisticated educational diagnostic tools and a personalized instruction platform. Mot. at 31-32 (citing Compl. ¶¶43, 50, 66, 79, 96).

### G.    Plaintiffs Fail to Plead a Plausible Negligence Claim (Count VIII)

**No Non-Speculative Damages.** Plaintiffs cite *Webb* for the proposition that "speculative damages may support a negligence claim, and a material risk of future harm is concrete harm," and that "time and effort spent mitigating risks from online data collection are sufficient to satisfy the damages element." Opp. at 31, n.12. But the plaintiffs in *Webb* alleged a "real risk of misuse of their information" after their information was "deliberately taken by thieves" and used to file a fraudulent tax return. 72 F.4th at 375. Here, Plaintiffs allege no data breach, no theft, and no concrete adverse effects from the collection or disclosure of their data—which they themselves allege occurred pursuant to data protection agreements with third parties, *see* Compl. ¶ 172.

Plaintiffs also argue that "[a]llegations of privacy invasions as damages are sufficient at the pleading stage." Opp at 31 (citing *Doe v. Tenet Healthcare Corp.*, 731 F. Supp. 3d 142, 149 (D. Mass. 2024)). But *Tenet* is inapposite. There, the plaintiff alleged concrete damages from the unauthorized disclosure of her medical information and its use for targeted advertising. 731 F. Supp. 3d at 147-148. Plaintiffs do not allege their information was similarly "publicly disclosed in the marketplace," *id*. at 149, or used for targeted advertising. Other cases reinforce this distinction.

*See* Mot. at 33; *In re LastPass*, 742 F. Supp. 3d at 123 (damages adequately pled through concrete allegations of lost time, ongoing risk, and mitigation costs actually incurred); *Walker v. Bos. Med. Ctr. Corp.*, 33 Mass. L. Rptr. 179 (Mass. Super. Ct. Nov. 20, 2015) (same).

**Economic Loss Doctrine.** Plaintiffs concede that the alleged diminution of value in their data is a purely economic loss, Mot. at 30, instead invoking a rare exception that applies only to a fiduciary-like "special relationship" not present here, Opp. at 32 (citing *Shedd*, 2022 WL 1102524, at *7-8 (applying exception to patient and medical provider who disclosed her medical history, financial data, and social security numbers)). Plaintiffs cite no authority to extend that exception to the present circumstances. *Id*. Neither Plaintiffs' conclusory pleading that a "special relationship" exists, Compl. ¶ 459-76, nor the mere existence of federal statutes Plaintiffs have not asserted justifies the extension of the law Plaintiffs seek, which would swallow the rule for any defendant possessing a plaintiff's data. This Court should follow the courts in this District that have refused to do just that. Mot. at 34, n.20 (citing cases declining to find a special relationship because defendant possessed plaintiff's data).

**Lack of Causation.** Plaintiffs contend they allege "injuries from the disclosure of their data, current misuse and risk of future misuse of that data, and mitigation efforts distinct from CA's data collection practices." Opp. at 32 (citing Compl. ¶¶ 302-22, 494). However, Plaintiffs' theory of "privacy harm" is not distinct from the alleged collection and disclosure—it *is* the collection and disclosure. That conflation is fatal. Mot. at 33, n.19. The Opposition does not dispute that Plaintiffs fail to plead causation as to their diminution of value damages theory because they allege no participation in any market, nor any impairment of such an effort by CA. Opp. at 32. Thus, there is no causal link to plead, and the negligence claim must be dismissed.

III.    CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint.

15

Respectfully submitted,
Curriculum Associates, LLC
By its attorneys,

COOLEY LLP

Dated: April 28, 2026

*/s/ Matthew D. Brown*
Matthew D. Brown
brownmd@cooley.com
(Admitted *Pro Hac Vice*)
Erik Lampmann-Shaver
elampmannshaver@cooley.com
(Admitted *Pro Hac Vice*)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

Naomi Miyeko Harralson May
nmay@cooley.com
(Admitted *Pro Hac Vice*)
10265 Science Center Drive
San Diego, CA  92121-117
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

Stephanie Schuyler
sschuyler@cooley.com
(Admitted *Pro Hac Vice*)
Erika P. Brigantti Abraham
(Admitted *Pro Hac Vice*)
ebriganttiabraham@cooley.com
55 Hudson Yards
New York, NY  10001-2157
Telephone: (212) 479-6000
Facsimile: (212) 479-6275

Celene C. Chen
celene.chen@cooley.com
500 Boylston Street
Boston, MA  02116-3736
Telephone: (617) 937-2300
Facsimile: (617) 937-2400

16

**<u>CERTIFICATE OF SERVICE</u>**

I, Matthew D. Brown, hereby certify that on this 28th day of April 2026, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants on the Notice of Electronic Filing, and paper copies will be sent to any non-registered participants.

*/s/ Matthew D. Brown*

17