**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **M.C. 1, et al.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CURRICULUM ASSOCIATES, LLC,**<br><br>**Defendant.** | **Civil Action No.**<br>**25-13942-FDS** |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION FOR A PROTECTIVE ORDER**

**SAYLOR, J.**

This is a putative class action alleging the unlawful collection and sharing of the private information of schoolchildren by Curriculum Associates, a company that provides learning and assessment software to K-12 schools across the country. Plaintiffs are minor children identified as M.C. 1, M.C. 2, M.C. 3, and M.C. 4, who have filed suit through their respective parents. They assert a variety of counts under federal and state law.

On September 30, the Court issued a memorandum and order that granted in part and denied in part defendant's motion to dismiss the complaint. Defendant has now moved for a protective order that would permit it to delete student data, which it contends is required to comply with state law and its contractual obligations. Defendant proposes to maintain a log that would capture the categories of student data subject to deletion. For the reasons set forth below, the Court will deny the motion.

## I. Background

The factual background of the case is set out fully in the Court's September 30, 2026,

memorandum and order. *M.C. 1 v. Curriculum Associates*, 2026 WL 2949062 (D. Mass. Sept. 30, 2026).

The complaint asserts claims for violation of the Federal Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* (Count 1); violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631, 632, and § 638.51 (Counts 2, 3, and 4); violations of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502 *et seq.* (Count 5); violation of the Massachusetts Right to Privacy Act ("MRPA"), Mass. Gen. Laws ch. 214, § 1B (Count 6); unjust enrichment (Count 7); negligence (Count 8); and violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A (Count 9).

In its September 30 memorandum and order, the Court held that the complaint stated a claim upon which relief can be granted as to as to Counts 1, 2, 3, 6, and 9. It granted the motion to dismiss under Rule 12(b)(6) as to Counts 4, 5, 7, and 8. On November 13, 2026, defendant filed its answer to the complaint, as well as a jury demand.

Previously, on July 7, 2026, defendant had filed a motion for a protective order. On July 15, 2026, the Court stayed discovery pending the resolution of defendant's motion to dismiss.

## II. <u>Legal Standard</u>

Under Fed. R. Civ. P. 26(c)(1), "[a] party . . . from whom discovery is sought may move for a protective order in the court where the action is pending." A court may grant that motion "for good cause, . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* Good cause is a "flexible" standard "that requires an individualized balancing of the many interests that may be present in a particular case," which can include "the public interest, the need for confidentiality, and privacy interests." *Gill v. Gulfstream Park Racing Ass'n., Inc.*, 399 F.3d 391, 402 (1st Cir. 2005) (first quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959–60 (D.C. Cir. 1999)).

In ruling on a motion for a protective order under Rule 26(c), courts are guided by the considerations enumerated in Rule 26(b)(2)(C). *Gardner v. Cape Cod Healthcare, Inc.*, 344 F.R.D. 127, 132 (D. Mass. 2023). Those include, among other things, whether "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," and whether the discovery exceeds its permissible scope under Rule 26(b)(1) of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(2)(c), 26(b)(1).

Ultimately, "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required," because it "is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## III. Analysis

The duty to preserve evidence "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (quoting *Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)). The duty to preserve encompasses what the party "knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Id.* at 217 (quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991)).[1] Thus,

[1] The phrase "reasonably calculated to lead to the discovery of admissible evidence" was deleted from Rule 26 in 2015. The Advisory Committee note states: "The 'reasonably calculated' phrase . . . is removed by these amendments. It is replaced by the direct statement that 'Information within this scope of discovery need not be admissible in evidence to be discoverable.'" Advisory Committee Notes on Rules—2015 Amendment, Fed. R. Civ.

"assessment of reasonableness and proportionality should be at the forefront of all inquiries into whether a party has fulfilled its duty to preserve relevant evidence." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010); *see also Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010) ("Whether preservation or discovery conduct is acceptable in a case depends on what is *reasonable,* and that in turn depends on whether what was done—or not done—was *proportional* to that case and consistent with clearly established applicable standards."). In short, the scope of the duty to preserve overlaps with the proper scope of discovery, which, as discussed above, also guides a court in determining whether there is "good cause" to enter a protective order.

Here, defendant contends that "Plaintiffs' demand that Curriculum Associates preserve the individual records of every student subject to a deletion request is disproportionate to the needs of this litigation and would require the company to breach its contractual and state law obligations." (Memorandum in Support of Motion for Protective Order, Dkt. No. 43, at 7) ("Def. Memo"). It maintains that a deletion log identifying the categories of student data "would preserve everything of probative value" because "the issues in this litigation do not turn on data of any individual student." (*Id.* at 7, 5). Thus, determining whether there is "good cause" to enter the proposed protective order ultimately depends on whether retaining student-specific data is within the proper scope of discovery. The Court will first evaluate defendant's contention that retaining student-specific records would breach its state law and contractual obligations and whether that contention should inform the analysis of "good cause."

---

P. 26(b)(1). Nevertheless, the touchstone of the analysis remains whether the evidence falls "within the scope of discovery as defined in this subdivision." *Id.*

### A. <u>Defendant's State-Law and Contractual Deletion Obligations</u>

Defendant maintains that it received deletion requests from schools in Utah and New York, and that it is required to comply with those requests under state law. (Def. Memo at 2, 7). It contends that breaching those state-law and contractual obligations "outweighs [the] likely benefit" of the discovery under Fed. R. Civ. P. 26(b)(1) and therefore provides "good cause to limit Curriculum Associates' preservation obligations." (*Id.* at 5-6).

Preserving individual student data would not, however, result in breaches of defendant's state-law obligations, because both states permit disclosure of student data when required by court order. For example, defendant cites to a Utah statute that requires contractors to "return or delete all personally identifiable student data under the control of the education entity" upon completion of the contract unless there is parental consent. Utah Code Ann. § 53E-9-309(5). Yet in that same section, the statute provides that, "[a]s authorized by law or court order, a third-party contractor shall share student data as requested by law enforcement." *Id.* § 53E-9-309(3). Likewise, the New York statute defines "[u]nauthorized disclosure or [u]nauthorized release" as "any disclosure or release not permitted by federal or State statute or regulation, any lawful contract or written agreement, or that does not respond to a lawful order of a court or tribunal or other lawful order." N.Y. Comp. Codes R. & Regs. tit. 8 § 121.1(t). The other statutes on which defendant relies contain substantially similar provisions.[2]

[2] *See, e.g.*, Cal. Educ. Code § 49077(a) ("Information concerning a pupil shall be furnished in compliance with a court order or a lawfully issued subpoena."); Del. Code Ann. tit. 14, § 8105A(4) (prohibiting disclosure of student data "unless the disclosure is made . . . "[t]o respond to or participate in the judicial process"); Ariz. Rev. Stat. § 15-1046(A)(4) (prohibiting disclosure or use of covered student information "unless the disclosure or use is made . . . "[t]o respond to or participate in the judicial process"); Tex. Educ. Code § 32.153(a) (providing that "[a]n operator may use or disclose covered information under the following circumstances," which include "to respond to or participate in the judicial process"); Conn. Gen. Stat. § 10-234cc(b)(4) (prohibiting disclosure of student information "unless the disclosure is made . . . in response to a judicial order"); Colo. Rev. Stat. § 22-16-109(3)(a) ("A school service contract provider may use or disclose student personally identifiable information to . . . [r]espond to or participate in the judicial process.").

Moreover, even if there were a conflict between state law and the duty to preserve relevant information when litigation is reasonably foreseeable, the latter would prevail. That is because the duty to preserve is a federal "common-law duty." Advisory Committee Notes on Rules—2015 Amendment, Fed. R. Civ. P. 37(e)); *see Hanlon v. Target Corp.*, 2026 WL 194631, at *7 (D. Mass. Jan. 26, 2026). And "where federal common law exists, it 'preempts and replaces' state law." *Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44, 54 (1st Cir. 2022) (quoting *Boyle v. United Tech. Corp.*, 487 U.S. 500, 504 (1988)) (citation modified). In short, defendant's state-law obligations do not exempt the individual student data from preservation or discovery. *See Laxalt v. McClatchy*, 809 F.2d 885, 889 (D.C. Cir. 1987) ("[A]bsent an express congressional intent to the contrary, the standards set forth in the FRCP must be followed with respect to discovery requests in District Court."); *c.f. Kalinoski v. Evans*, 377 F. Supp. 2d 136, 140–41 (D.D.C. 2005) ("The Supremacy Clause of the United States Constitution (as well as Federal Rule of Evidence 501) prevent a State from directing a federal court with regard to the evidence it may order produced in the adjudication of a federal claim.").

Similarly, the performance of contractual deletion obligations is excused by the duty to preserve and the duty to comply with a court order. *See* Restatement (Second) of Contracts § 264 ("If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made."). Even if performance were not excused, a contractual obligation to delete information about individual students does not bar discovery or eliminate the duty to preserve. *See Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009) ("[E]ven if the agreement had purported to block disclosure, such a provision would be ineffectual. Contracts bind only the parties. No

one can 'agree' with someone else that a stranger's resort to discovery under the Federal Rules of Civil Procedure will be cut off."); *cf. Atchison Casting Corp. v. Marsh, Inc.*, 216 F.R.D. 225, 226 (D. Mass. 2003) (noting that "courts can allow the discovery of information contained in and related to confidential settlement agreements").

The fact that state-law and contractual obligations do not categorically exempt individual student records from discovery does not, of course, resolve the question of whether discovery as to that information is proper in this case. *See Nguyen v. Kissinger*, 528 F.2d 1194, 1205 (9th Cir. 1975); *see also Laxalt*, 809 F.2d at 890 ("The need to balance conflicting interests is entirely different from the proposition . . . that merely because records are *subject* to the Privacy Act they are exempt in their entirety from civil discovery absent a specific showing of 'need.'"). Thus, if defendant is permitted to delete the individual student information, it will be because such a measure is warranted under Rule 26. *See Polston v. Eli Lilly & Co.*, 2010 WL 2926159, at *1 (D.S.C. July 23, 2010) (noting that "the only question before the court is whether any information in the . . . agreement is relevant and not unduly burdensome to produce" after first finding no basis to "except[] a confidential settlement agreement from Rule 26(b)(1)").

### B. <u>Rule 26</u>

The parties dispute whether the student-specific data falls within the proper scope of discovery according to the considerations laid out in Fed. R. Civ. P. 26. Rule 26(b)(1) provides as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

The first issue is relevance. Defendant contends that the central question of whether it used and disclosed student data without consent "has nothing to do with the particular data of any individual student," and that the relevant evidence is instead "what categories of data were collected under which contracts, and what Curriculum Associates did with data in those categories." (Def. Memo at 5). Plaintiffs contend that "[c]apturing the categories of data alone in a deletion log . . . would not enable [them] to assess the nature and sensitivity of the data captured," which is essential to several of their claims. (Pl. Opp., Dkt. No. 47, at 5-6) ("Pl. Opp."). The Court, in its September 30 memorandum and order, held that the complaint stated a claim as to Count 3, relying on allegations that defendant collected and shared "uniquely personal" data including "demographic information, disability or special-education status, performance and progress on academic assessments, behavior while taking assessments, and evaluations and predictions about proficiency." *Curriculum Associates*, 2026 WL 2949062, at *9. The Court relied on those same allegations in finding that the complaint stated a claim as to Counts 6 and 9. *Id.* at *13, *17.

Thus, some of plaintiffs' claims do, in fact, depend on the alleged nature and sensitivity of the data that they maintain was collected and shared without consent. Plaintiffs could perhaps establish that defendant *collected* highly personal and sensitive information without the benefit of individual student data, as long as the categories of data provided by defendant matched the specificity of the types of data discussed in the complaint and the Court's September 30 memorandum. However, they would have difficulty establishing that defendant *shared* those types of information. As defendant notes, and plaintiff does not dispute, the data at issue here "does not itself contain information regarding whether it was shared with any third party." (Def.

Memo at 6 n.4). If the data were deleted, it is unclear how plaintiffs could prove that such sharing occurred; for example, even if they were able to obtain information from recipients through third-party subpoenas, plaintiffs would be unable to match that data with the categories of data in the deletion log. *See Greenberg v. PATHS Program Holding, LLC (MA)*, 2023 WL 3868318, at *3 (D. Mass. June 7, 2023).

In short, individual student data may be essential to plaintiffs' claims that defendant shared sensitive data with third parties. It is therefore relevant within the meaning of Rule 26. *See Green v. Cosby*, 152 F. Supp.3d 31, 35 (D. Mass. 2015) ("As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action.") (quoting *Cherkaoui v. City of Quincy*, 2015 WL 4504937, at *1 (D. Mass. July 23, 2015)).

The next issue is proportionality. Here, consideration of "the importance of the issues at stake in the action," Fed. R. Civ. P. 26(b)(1), supports proportionality. The case implicates "the protection of privacy interests from unwarranted intrusion"—the privacy interests of children in particular. *Curriculum Associates*, 2026 WL 2949062, at *1. The "amount in controversy" of $10 million is also substantial. Fed. R. Civ. P. 26(b)(1); *c.f. Gardner*, 344 F.R.D. at 133 (finding that the amount in controversy "for the emotional distress damages . . . to support recovery under the race and gender discrimination claims is likely significant"). The "parties' relative access to relevant information" further points toward proportionality because the data is not otherwise available to plaintiffs. Fed. R. Civ. P. 26(b)(1).[3] Furthermore, in evaluating "the parties' resources," the Court notes that defendant appears to have substantially more resources than

[3] For that same reason, retaining the information would not be "unreasonably cumulative or duplicative" under Fed. R. Civ. P. 26(b)(2)(c)(i).

plaintiffs, who are individual children suing through their parents. *Id.* 26(b)(1). And because several of the asserted counts require establishing that sensitive information was disseminated to third parties, the "importance of the discovery in resolving the issues" is elevated. *Id.*

The final proportionality consideration under Rule 26(b)(1) is "whether the burden or expense of the proposed discovery outweighs its likely benefit." Although preserving the information will present an administrative burden and expense for defendant, the "information asymmetry" here means that "the burden of responding to discovery lies heavier on the party who has more information," that is, defendant. Advisory Committee Notes on Rules—2015 Amendment, Fed. R. Civ. P. 26(b)(1).[4] As stated above, defendant's state-law and contractual obligations will not be violated by retaining individual student data in accordance with a court order requiring them to preserve it. But even assuming that those obligations are burdens to consider in the balancing, they would not outweigh the likely benefit of the information, given all the considerations that point toward discoverability.

Retaining individual student data is thus both relevant and proportionate in light of the considerations outlined in Rule 26(b)(1). That strongly counsels against a finding of "good cause" under Rule 26(c), which, as stated above, is guided by the considerations in Rule 26(b). Moreover, defendant's proposed protective order would effectively render the individual student information undiscoverable. That blurs the distinction between the disfavored measure of precluding discovery and the preferred approach of limiting disclosure through a protective order

---

[4] Defendant contends that plaintiffs "demand[ed] a request-by-request review process with veto authority over each deletion," which "would impose recurring costs as requests accumulate" and "convert[] the procedure into an adversarial pre-clearance process for every incoming request." (Def. Memo at 6). It is unclear whether plaintiffs' proposed measures in their opposition would replace that request or simply augment it. In any event, this memorandum and order addresses only defendant's proposal to delete student-specific information and instead maintain a log with the categories of deleted data. The Court does not now decide whether any other discovery protections or limitations are appropriate.

to safeguard privacy interests. *See, e.g.*, *Laxalt*, 809 F.2d at 890; *Griffin v. Mashariki*, 1997 WL 756914, at *2-*3 (S.D.N.Y. Dec. 8, 1997); *Stewart v. Mitchell Transp.*, 2002 WL 1558210, at *5-*6 (D. Kan. July 11, 2002). That provides further reason why there is no "good cause" to limit defendant's duty to preserve to permit the deletion of those records and the substitution of the proposed deletion log.

To be clear, there may be alternative protections that could reduce the burden and expense of preservation. Plaintiff in fact suggests one such set of measures that would designate the data as "Highly Confidential-Attorneys' Eyes Only," use archival data storage, and employ procedures to return or destroy the data at the end of litigation. (Pl. Opp. at 8). The Court will make no finding as to whether those measures, or any other protective measures, are appropriate until it receives defendant's position on the matter. Defendant may also renew its present motion for a protective order if circumstances change over the course of litigation.

## IV. Conclusion

For the foregoing reasons, defendant's motion for a protective order is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: November 20, 2026